UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.,** <br><br> *Plaintiff*, <br><br> v. <br><br> **JENA GRISWOLD,** in her official capacity as Secretary of State for the State of Colorado, <br><br> *Defendant*. | Civil Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Public Interest Legal Foundation, Inc., by and through counsel, brings this action for declaratory and injunctive relief against Defendant for violations of the Public Disclosure Provision of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507(i)(1).

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), because the action seeks injunctive and declaratory relief under the NVRA.

2. This Court also has jurisdiction because Plaintiff complied the NVRA's pre-litigation notice requirements and Defendant failed to cure her violation of law in the time the NVRA affords. *See* 52 U.S.C. § 20510(b)(1)-(2).

3. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4. The Public Interest Legal Foundation, Inc., ("Foundation") is a non-partisan, 501(c)(3) public interest organization incorporated and based in Indianapolis, Indiana. The Foundation promotes the integrity of elections nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials in order to determine whether lawful efforts are being made to keep voter rolls current and accurate in accordance with federal and state law, and to determine whether eligible registrants have been improperly removed from voter rolls. The Foundation also uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

5. Defendant Jena Griswold is the Secretary of State for the State of Colorado. Defendant has been designated Colorado's chief election official "[t]o coordinate the responsibilities of the state of Colorado under the federal 'National Voter Registration Act of 1993.'" C.R.S. 1-1-107(1)(d); 52 U.S.C. § 20509. Defendant is sued in her official capacity only.

## BACKGROUND

*The NVRA*

6. The NVRA provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted

for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").[1]

7.  The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

8.  The Public Disclosure Provision is designed to "ensure that election officials are fulfilling their list maintenance duties" and is "available to any member of the public." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla. Mar. 30, 2018). The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at *12-13.

***The Electronic Registration Information Center***

9.  The Electronic Registration Information Center ("ERIC") "is a non-profit organization with the sole mission of assisting states to improve the accuracy of America's voter rolls and increase access to voter registration for all eligible citizens." Home, https://ericstates.org/.

10. ERIC is "is managed by a Board of Directors comprised of a representative from each member state – either its chief election official or their designee." ERIC: Summary of Membership Guidelines and Procedures, https://ericstates.org/wp-

---

[1] The records described by the Public Disclosure Provision are common referred to as "voter list maintenance records."

content/uploads/2019/06/ERIC-Membership-Summary-v20190603.pdf (last accessed Dec. 16, 2021) (hereafter, "ERIC Membership Guidelines").

11. ERIC "[m]embers pay a one-time membership fee of $25,000" and "annual dues." *Id*.

12. Colorado has been a member of ERIC since 2012.[2] *See* ERIC 2017 Annual Report at 9, https://ericstates.org/wp-content/uploads/2019/01/FINAL_ERIC_2017_Annual_Report.pdf (last accessed Dec. 16, 2021) (hereafter, "ERIC Annual Report").

13. All members of ERIC, including Colorado, signed the ERIC "Membership Agreement," which "sets forth the terms and conditions of membership" in ERIC. ERIC Bylaws, Article II, Section 3 (PDF page 4), https://ericstates.org/wp-content/uploads/2020/02/ERIC_Bylaws_01-2020.pdf (hereafter, "ERIC Bylaws") (last accessed Dec. 16, 2021).

14. Per the ERIC Membership Agreement, Colorado provides the following to ERIC "every sixty (60) days":

- "(1) all inactive and active voter files" and,
- "(2) all licensing or identification contained in the motor vehicles database."

ERIC Bylaws, Exhibit A (Membership Agreement) at Section 2(b) (PDF page 17).

15. Colorado must also and does "use its best efforts to transmit, on a regular basis, data relating to individuals that exists in the records of other agencies within its jurisdiction that

---

[2] According to ERIC's website, as of October 2021, the following are members of ERIC: "Alabama, Alaska, Arizona, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, Nevada, New Mexico, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin. The District of Columbia is also a member. (31 states plus D.C.)." FAQs, Which States Are Members of ERIC?, https://ericstates.org/.

perform any voter registration functions, including, but not limited to, those required to perform voter registration pursuant to the National Voter Registration Act[.]" ERIC Bylaws, Exhibit A (Membership Agreement) at Section 3 (PDF page 17).

16. ERIC "process[es] data that relates to the maintenance of [Members'] voter registration lists and provide[s] regular (at least on a monthly basis) reports to [each] Member." ERIC Bylaws, Exhibit A (Membership Agreement) at Preamble (PDF page 16).

17. From ERIC, Colorado and "[e]ach member state receives reports that show voters who have moved within their state, voters who have moved out of state, **voters who have died**, duplicate registrations in the same state and individuals who are potentially eligible to vote but are not yet registered." FAQs, What Reports Do States Receive From ERIC, https://ericstates.org/ (emphasis added).

18. "The Social Security Death Master File, sometimes referred to as the 'Social Security Death Index,' is used by ERIC to identify voters who have died so that they can be removed from ERIC states' voter rolls." ERIC Annual Report at 6.

19. Colorado receives data from ERIC showing registrants who are deceased or likely deceased (hereafter "ERIC Deceased Data").

20. When Colorado receives ERIC Deceased Data showing deceased registrants, Colorado is required to, "at a minimum, initiate[s] contact with th[ose] voter[s] in order to correct the inaccuracy or obtain information sufficient to inactivate or update the voter[s'] record[s]." *Id*. at 5(b) (PDF page 20).

21. The ERIC Membership Agreement provides that Colorado "has ninety (90) days after the data was sent to initiate contact with at least 95% of the voters on whom data indicating a record was inaccurate or out-of-date … was provided." *Id*.

22. The ERIC Membership Agreement provides further, "Within ten (10) business days of the ninetieth day, [Colorado] shall provide a written certification to the Executive Director of ERIC that Member has complied or not complied with" the requirements described in paragraphs 20 and 21. *Id*.

23. "All voter registration list maintenance activity based on information provided by ERIC must be conducted under the strict guidelines of the National Voter Registration Act (NVRA)." ERIC Membership Guidelines, "Membership Requirements."

24. Colorado uses ERIC Deceased Data to conduct list maintenance programs and activities required by state law and the NVRA, including cancellation of registrations belonging to deceased individuals. *See* 52 U.S.C. § 20507(a)(4)(A); *see* Exhibit D, *infra*.

***Criticism of ERIC***

25. The accuracy of ERIC reports, on which Colorado and other member states rely to remove registrants from the voter rolls, has been criticized. Barbara Arnwine, the former executive director of the Lawyers' Committee for Civil Rights Under Law, stated, "ERIC should be called ERROR because it's that erroneous and that full of flaws." Palast, *ERIC Crow, Jim Crow's liberal twin* (July 15, 2020), https://www.nationofchange.org/2020/07/15/eric-crow-jim-crows-liberal-twin/.

26. The Brennan Center for Justice reported the following in a 2019 report:

> Wisconsin … reported that although ERIC was helpful in updating more than 25,000 registration addresses in 2017 and 2018, it also resulted in more than 1,300 voters signing 'supplemental poll lists' at a spring 2018 election, indicating that they had not in fact moved and were wrongly flagged.

Brater et al., Purges: A Growing Threat to the Right to Vote at 9 (2019), https://www.brennancenter.org/sites/default/files/2019-08/Report_Purges_Growing_Threat.pdf (last accessed Dec.9, 2021).

27. Marc Meredith, an associate professor in the Department of Political Science at the University of Pennsylvania, stated,

> While ERIC is usually correct, sometimes they're wrong, and it turns out they're more likely to be wrong in the case where the registrant is a racial or ethnic minority as opposed to a white registrant[.]

Kristen de Groot, Penn Today, The racial burden of cleaning voter rolls (Feb. 24, 2021), https://penntoday.upenn.edu/news/racial-burden-cleaning-voter-rolls (last accessed Dec. 9, 2021).

28. A Yale University-led study of ERIC in Wisconsin

> found that at least 4% of people listed as suspected 'movers' cast ballots in 2018 elections using addresses that were wrongly flagged as out of date. Minority voters were twice as likely as white voters to cast their ballot with their original address of registration after the state marked them as having moved, the study showed.

Yale University, Study uncovers flaws in process for maintaining state voter rolls (Feb. 26, 2021), https://phys.org/news/2021-02-uncovers-flaws-state-voter.html (last accessed Dec. 9, 2021).

29. The Yale study's lead author, political scientist Gregory A. Huber, stated,

> The process of maintaining states' voter-registration files cries out for greater transparency[.] … Our work shows that significant numbers of people are at risk of being disenfranchised, particularly those from minority groups. Unfortunately, we don't know enough about the process used to prune voter rolls nationwide to understand why mistakes occur and how to prevent them.

*Id*.

*Reported Instances of Voting in the Names of the Deceased*

30. In 2005, a Colorado man was reportedly "charged with one count of forgery" after he was "accused of sending in a 2005 general-election ballot for his mother … although she died in July" of that year.[3]

31. In 2016, approximately four years after Colorado joined ERIC, a Colorado woman reportedly "attempted to vote in the 2016 primary election using a deceased man's ballot."[4] She "attempted to use the ballot of [a man] who died in 2012."[5] She reportedly "pleaded guilty in the case."[6]

32. In 2017, a Colorado woman reportedly "pleaded guilty to casting a vote in her deceased mother's name in 2013."[7]

*Defendant is Denying the Foundation Access to Voter List Maintenance Records*

33. On June 24, 2021, the Foundation emailed a letter to the Colorado Secretary of State ("COSOS"). The letter requested the following records, pursuant to the NVRA's Public Disclosure Provision:

1. All "ERIC Data"[8] received from ERIC during the years 2019, 2020, and 2021 concerning registered voters identified as deceased or potentially deceased.

2. All reports and/or statewide-voter-registration-system-generated lists showing all registrants removed from the list of eligible voters for reason of death for the years 2019, 2020, and 2021. Such lists will optimally include unique voter

---

[3] Pankratz, *Mom was dead but still cast ballot*, Denver Post (Dec. 14, 2005), *available at* https://www.denverpost.com/2005/12/14/mom-was-dead-but-still-cast-ballot/ (last accessed Dec. 16, 2021).

[4] Nicholson, *Woman pleads guilty in El Paso County voter fraud case, used dead man's ballot*, Denver Post (March 8, 2017), *available at* https://www.denverpost.com/2017/03/08/woman-el-paso-county-voter-fraud-ballot/ (last accessed Dec. 16, 2021).

[5] *Id*.

[6] *Id*.

[7] AP, *Colorado Springs woman admits voting her deceased mother's ballot*, Denver Post (Sept. 14, 2017), *available at* https://www.denverpost.com/2017/09/13/colorado-springs-voter-fraud-guilty-plea/ (last accessed Dec. 16, 2021).

[8] The Foundation defined "ERIC Data" as the "'data included in reports provided by ERIC' to member states concerning deceased and relocated registrants, and other information related to voter registration list maintenance." Exhibit A at 1 (quoting ERIC Bylaws, Exhibit A (Membership Agreement) at Section 4(a) (PDF page 18)).

8

    identification numbers, county or locality, full names, addresses, and dates of birth.

Exhibit A (hereafter, the "Request").

  34. When no response was received, the Foundation wrote to COSOS via email on July 16, 2021, to ask for an update on the Request.

  35. When no response was received, the Foundation again wrote to COSOS via email on August 18, 2021, to ask for an update on the Request.

  36. On August 18, 2021, COSOS denied via email the Foundation's request for ERIC Deceased Data for the years 2019, 2020, and 2021. Exhibit B (hereafter, the "Denial Letter").

  37. The Denial Letter cited "C.R.S. 24-72-204(1)" by operation of "18 U.S.C. 2721, the Driver's Privacy Protection Act (DPPA)." Exhibit B.

  38. The Denial Letter also stated, "In addition, to the extent this query requests Limited Access Death Master File (LADMF) data, we are precluded from releasing that data under 15 CFR Part 1110." Exhibit B.

  39. The Denial Letter further stated, "[W]e are not denying this request based on the ERIC Membership Agreement." Exhibit B.

  40. The ERIC Membership Agreement appears to prohibit members from disclosing records they are otherwise legally required to disclose without first obtaining a court order. ERIC Bylaws, Exhibit A (Membership Agreement) at Section 4(a) (PDF page 15) ("Should a Member receive a request to disclose ERIC Data and determines that it is legally obligated, in whole or in part, to comply with such request, it shall not make the disclosure without first obtaining a court order compelling it to do so, a copy of which shall be provided to ERIC.").

  41. COSOS granted in part and denied in part the Foundation's second request. COSOS provided a list of former registrants removed from Colorado's voter roll for the reason

of death during the period between 2019 and 2021. COSOS denied the Foundation's request for "birth days or months" on the grounds that "C.R.S. 24-72-204(8)(a)" prohibits disclosure of that information. Exhibit B.

***The Foundation Notified Defendant that She is Violating the NVRA***

42. On August 20, 2021, the Foundation notified Defendant that she is in violation of the NVRA for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i). Exhibit C at 1 (hereafter, the "Notice Letter").

43. The Foundation sent the Notice Letter to Defendant via email and certified mail through the United States Postal Service.

44. The Notice Letter further notified Defendant that the requested records fall within the scope of the NVRA's Public Disclosure Provision. Exhibit C at 2.

45. The Notice Letter further notified Defendant that litigation may commence against her if the violation about which she was notified was not cured within 90 days of her receipt of the letter. Exhibit C at 3 (citing 52 U.S.C. § 20510(b)(2)).

46. By sending the Notice Letter to Defendant, the Foundation complied with the NVRA's pre-litigation notice requirements. *See* 52 U.S.C. § 20510(b)(1)-(2).

47. In the Notice Letter, the Foundation offered to satisfy its request on the following terms:

1. CO SOS shall provide to the Foundation the requested 'ERIC Data' reports with unique voter identification numbers. The Foundation will consent, in this instance, to the redaction of all data elements contained in the Limited Access Death Master File ("LADMF") and protected by 15 C.F.R. § 1110 et seq., such as SSN dates of birth, SSN dates of death, SSN death locations, and full/partial SSN numbers.

Exhibit C at 3.

48. On November 18, 2021, COSOS sent a letter to the Foundation via email. Exhibit D. The letter confirmed the denial of the Foundation's Request.

49. The letter also explained that "[e]ach month" the Colorado Department of State "receives a deceased voter list created by ERIC based on a comparison of data sources that ERIC obtains from a variety of sources, including but not limited to the state voter registration list and the LAMDF created by the Social Security Administration[.]" Exhibit D at 2.

50. The letter also explained that "ERIC sends a file to CDOS listing those registrants that ERIC believes are deceased and therefore eligible for cancellation." Exhibit D at 2.

51. The letter also explained that "[t]hese data, in conjunction with data imported into SCORE from other sources, make up the list maintenance record that CDOS relies on." Exhibit D.

52. In other words, Colorado "relies on" the "deceased voter list created by ERIC" to perform voter list maintenance.

53. The NVRA requires election officials to maintain "all" voter list maintenance records for at least two (2) years. 52 U.S.C. § 20507(i)(1).

54. However, COSOS's letter admits that it does not comply with the NVRA's two-year retention requirement. Instead, "CDOS only maintain copies of the deceased voter lists received from ERIC for a few months." Exhibit D at 2.

55. On December 3, 2021, the Foundation notified Defendant via email that her failure to maintain the "deceased voter lists received from ERIC" for at least two years violates the NVRA. Exhibit E. The notice letter was also sent to Defendant via USPS certified mail.

56. The Foundation plans to amend this complaint in the event Defendant does not cure her violation of the NVRA's record retention requirement in the time the NVRA affords. *See* 52 U.S.C. § 20510(b).

***Defendant Did Not Cure Her Violation in the Time the NVRA Affords***

57. Defendant received notice of her NVRA violation via email on August 20, 2021.

58. According to the electronic return receipt information provided by USPS, Defendant received notice of her NVRA violation via USPS certified mail on August 30, 2021.

59. The NVRA afforded Defendant 90 days to cure her NVRA violation, 52 U.S.C. § 20510(b)(2), a period that expired on **November 18, 2021** (email), and, at the latest, on **November 28, 2021** (certified mail).

60. Defendant did not cure her NVRA violation within 90 days of her receipt of the Notice Letter, and as of the date of this pleading, has still not cured her NVRA violation. This action is therefore ripe.

***Colorado Law and Defendant's Actions Are Harming the Foundation***

61. The requested records are records within the scope of the NVRA's Public Disclosure Provision.

62. The Public Disclosure Provision authorizes and entitles the Foundation to inspect and duplicate, or otherwise receive the requested records.

63. Defendant's violations of the NVRA are causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.").

64. By denying the Foundation the ability to obtain the requested voter list maintenance records, Defendant is also impairing the Foundation's ability to, *inter alia*, (1) assess compliance by Colorado with state and federal voter list maintenance obligations and (2) aid Colorado in carrying out its voter list maintenance programs and activities.

65. Defendant's violation of the NVRA is thus frustrating, impeding, and harming the Foundation's efforts to carry out its organizational mission and thereby injuring the Foundation.

66. The Foundation intends to request similar records from Defendant in the future.

## COUNT I
### Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)

67. The Foundation realleges the preceding paragraphs as if fully stated herein.

68. The requested record(s) are in the possession, custody, and control of Defendant.

69. Defendant is denying the Foundation access to records within the scope of the NVRA's Public Disclosure Provision and thereby violating the NVRA's Public Disclosure Provision.

70. Neither other federal laws nor federal regulations override the NVRA's Public Disclosure Provision as a matter of law.

71. C.R.S. § 24-72-204(1) and any other Colorado statute, code, regulation, practice, or policy that conflicts with, overrides, or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy Clause and the Elections Clause of the Constitution of the United States. *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013). Such preempted laws are invalid and unenforceable.

72. The Foundation is entitled to relief but has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8(i) of the NVRA for denying the Foundation the opportunity to inspect and copy the ERIC Deceased Data.

2. Declaring that Defendant is in violation of Section 8(i) of the NVRA for denying the Foundation the opportunity to inspect and copy deceased cancellation reports with voter identification numbers.

3. Declaring that Section 8(i) of the NVRA preempts and supersedes C.R.S. § 24-72-204(1) and any Colorado statute, code, regulation, practice, or policy that prevents the Foundation from inspecting and copying the requested records.

4. Ordering Defendant to provide the requested records to the Foundation.

5. Permanently enjoining Defendant from denying similar requests in the future.

6. Ordering Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

7. Granting the Foundation further relief that this Court deems just and proper.

Dated: December 16, 2021.

For the Plaintiff Public Interest Legal Foundation:

        /s/ Noel H. Johnson
Noel H. Johnson*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
*Admitted to the bar of the U.S. District Court for the District of Colorado*

*Attorneys for Plaintiff Public Interest Legal Foundation*