IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03384-PAB-MEH

PUBLIC INTEREST LEGAL FOUNDATION, INC.,
Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State for the State Colorado,
Defendant.

## MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

Defendant, Colorado Secretary of State Jena Griswold, moves to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6). Plaintiff's complaint fails to state a claim upon which relief can be granted because (1) the plain language of the National Voter Registration Act (NVRA) does not require the release of the requested records, (2) Plaintiff's construction of the NVRA would create unnecessary conflict with later-enacted federal statutes, and (3) Plaintiff's reading of the NVRA would require the Court to conclude that the NVRA impliedly repealed existing privacy statutes. Undersigned counsel conferred with Plaintiff under D.C.Colo.LCivR 7.1 and Part III.F.2.a of the Court's Civil Practice Standards. Plaintiff opposes the requested relief.[1]

### BACKGROUND

***The National Voter Registration Act.*** In 1993, Congress passed the NVRA, declaring that "it is the duty of the Federal, State, and local governments to promote the exercise" of the

---

[1] Plaintiff filed a similar complaint in *Public Interest Legal Foundation v. Evans*, No. 1:21-cv-03180 (D.D.C., filed Dec. 6, 2021). Doc. 1-8.  That case has a similar fully-briefed Motion to Dismiss pending.

right to vote, and that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation." 52 U.S.C. § 20501(a). The NVRA was passed with four express purposes: (1) "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office"; (2) "to make it possible for Federal, State, and local governments to implement [the NVRA] in a manner that enhances the participation of eligible citizens as voters" in federal elections; (3) "to protect the integrity of the electoral process"; and (4) "to ensure that accurate and current voter registration rolls are maintained." *Id.* § 20501(b).

While the NVRA largely pertains to voter registration activities, it also outlines when a state may remove a registered voter from its official list of eligible voters. *Id.* § 20507(3). A state may not remove a registered voter from voter rolls except (1) "at the request of the registrant"; (2) "as provided by State law, by reason of criminal conviction or mental incapacity"; or (3) as part of a "general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" because of "the death of the registrant" or "a change in the residence of the registrant." *Id.* §§ 20507(a)(3), (4); *see also id.* § 20507(d) (specifying process for confirming a change of residence).

The NVRA also contains a public disclosure provision that addresses which records states must make available to the public. It requires the following:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

2

> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

52 U.S.C. § 20507(i).

*The Claims*. The crux of Plaintiff's complaint is that the Secretary has failed to comply with the NVRA's public disclosure provision by denying Plaintiff access to records it believes fall within the scope of that provision. Doc. 1, ¶ 69. The allegations stem from Colorado's membership in the Electronic Registration Information Center (ERIC), a non-profit membership organization consisting of 31 states and the District of Columbia that share information concerning their voter rolls and voters' eligibility to register to vote. *See* Doc. 1, ¶¶ 9, 12 n.2; ERIC 2017 Annual Report at 2 (cited in Doc. 1, ¶ 12). All members sign a membership agreement, which sets forth the terms and conditions for ERIC membership. Doc. 1, ¶ 13. Under the membership agreement, every sixty days Colorado must provide ERIC (1) all inactive and active voter files, and (2) all licensing or identification contained in the state's motor vehicles database. *Id.* ¶ 14 (citing Doc. 1-1, Compl. Ex. A, ERIC Bylaws at § 2(b)).

ERIC, using its certified access to the confidential Social Security Death Master File (specifically, a confidential subset called the Limited Access Death Master File (LADMF)), provides its members with non-public reports "that show who have moved within their state, voters who have moved out of state, **voters who have died**, duplicate registrations in the same state and individuals who are potentially eligible to vote but are not registered." Doc. 1, ¶¶ 17-18 (emphasis in original); *see also* Doc. 1-4, pp. 1-2. Access to the LADMF is restricted to those entities, like ERIC, that meet certain requirements under a Department of Commerce certification program. *See id.* ¶ 18 (citing ERIC 2017 Annual Report at 6); *see also* 42 U.S.C.

§ 1306c; 15 C.F.R. § 1110.102. The confidentiality protecting deceased individuals' information in the LADMF covers the "3-calendar-year period beginning on the date of the individual's death[.]" 42 U.S.C. § 1306c(a). ERIC members must agree that they will not use or transmit any data provided by ERIC for any purpose other than the administration of elections under state and federal law. ERIC Bylaws, Ex. A, p. 15 (Membership Agreement, § 4.a) (cited in Doc. 1, ¶ 14).

Relevant to Plaintiff's complaint, ERIC provides Colorado with reports "showing registrants who were deceased or likely deceased." Doc. 1, ¶ 19. As explained below, Colorado then uses the list provided by ERIC, along with other sources of information, to create a separate list, which ultimately makes up the actual list maintenance record that Colorado provides to each county for the purpose of cancelling deceased voters' registrations. Doc. 1-4, p. 2.

***The Conferrals.*** On June 24, 2021, Plaintiff sent the Secretary a request for records under the NVRA's public disclosure provision. That request sought the following records:

1. All "ERIC Data"[2] received from ERIC during the years 2019, 2020, and 2021 concerning registered voters identified as deceased or potentially deceased.[3]
2. All reports and/or statewide-voter-registration-system-generated lists showing all registrants removed from the list of eligible voters for reason of death for the years 2019, 2020, and 2021. Such lists will optimally include unique voter identification numbers, county or locality, full names, addresses, and dates of birth.

---

[2] Plaintiff defined "ERIC Data" broadly as: "'data included in reports provided by ERIC' to members states concerning deceased and relocated registrants, and other information related to voter registration list maintenance. *See* ERIC Membership Agreement at Section 4(a) (page 15), *available at* https://ericstates.org/wpcontent/uploads/2020/02/ERIC_Bylaws_01-2020.pdf (last accessed June 23, 2021)." Doc. 1-1, p. 1 n.1.

[3] Plaintiff's request made clear that it sought confidential LADMF information, stating "[t]he Social Security Death Master File, sometimes referred to as the 'Social Security Death Index,' is used by ERIC to identify voters who have died so that they can be removed from ERIC states' voter rolls." Doc. 1-1, p. 1 n.2. Plaintiffs' request also implicated the three most recent calendar years—the exact same confidentiality period covering the LADMF. 42 U.S.C. § 1306c(a).

4

On August 18, 2021, the Secretary granted Plaintiff's request for a list showing all registrants removed from the list of eligible voters for reason of death for the years 2019, 2020, and 2021, but denied Plaintiff's request for all ERIC data. As the basis for her partial denial, the Secretary cited to 18 U.S.C. § 2721, the Driver's Privacy Protection Act, and 15 C.F.R. § 1110, which as explained below restricts access to the LADMF to only those entities, like ERIC, that meet the requirements of the Department of Commerce's certification program. Doc. 1-2.

On August 20, 2021, Plaintiff notified the Secretary that it believed the Secretary was in violation of the NVRA for failing to permit inspection of voter list maintenance records. Doc. 1, ¶ 42; Doc. 1-3. The Secretary responded on November 18, 2021, reiterating her previous compliance with the NVRA and further clarifying why the requested ERIC data is not required to be maintained or produced for public inspection under § 20507(i)(1) of the NVRA. Doc. 1-4, p. 2. As that letter explained, the Secretary's staff "obtains and evaluates data from a variety of sources, including but not limited to ERIC Data, and then creates and maintains its own record 'showing all the registrants removed from the list of eligible voters for reasons of death for the years 2019, 2020, and 2021.'" *Id.* (quoting Doc. 1-1). The letter further explained that

> [e]ach month, [Colorado Department of State (CDOS)] receives a deceased voter list created by ERIC based on a comparison of data sources that ERIC obtains from a variety of sources, including but not limited to the state voter registration list and the LAMDF created by the Social Security Administration, that is weighted based on the matching criteria in Colorado law provided to ERIC. Following that comparison and matching process each month, ERIC sends a file to CDOS listing those registrants that ERIC believes are deceased and therefore eligible for cancellation. These data, in conjunction with data imported into SCORE from other sources, make up the list maintenance record that CDOS relies on. The voter-specific information concerning deceased voters was presented in the spreadsheet CDOS provided to you. The only information included in the final list maintenance record that CDOS creates and provides to each county is the minimum information necessary to implement cancellation of deceased voters' records.

*Id.* (footnote omitted).

## LEGAL STANDARD

To state a claim on which relief can be granted, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations are not presumed true. *Id.* Dismissal under Rule 12(b)(6) is required where the complaint lacks a "cognizable legal theory." *Futch v. Campbell*, No. 20-cv-00724-RM-GPG, 2020 WL 5899849, at *2 (D. Colo. June 1, 2020) (citing *Golan v. Ashcroft*, 310 F. Supp. 3d 1215 (D. Colo. 2004)). When considering a motion to dismiss under Rule 12(b)(6), the court may consider the contents of the complaint, documents incorporated by reference in the complaint, documents referred to in and central to the complaint, and matters of which the court may take judicial notice. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

## ARGUMENT

**I.      Plaintiff fails to state a claim under the plain language of the NVRA.**

The Secretary's August 18, 2021 response to Plaintiff's requests complied with the NVRA because the Secretary provided all records concerning the implementation of list maintenance activities for deceased voters. Stated differently, the Secretary's response to Plaintiff's request for ERIC data did not violate the NVRA because the plain language of the public disclosure provision does not require disclosure of those records.

"The goal of statutory interpretation is to 'ascertain the congressional intent and give effect to the legislative will.'" *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (quoting *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008)). When conducting this analysis, a court must

6

first turn to the statute's plain language. Undefined terms are given their ordinary meanings, considering "both the specific context in which the word is used and the broader context of the statute as a whole." *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (quoting *United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017)).

The public disclosure provision of the NVRA requires that states make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Under a plain language reading, the public disclosure provision is limited to records "concerning the implementation of programs and activities." The court in *Kemp* examined the common and ordinary meaning of the terms "concern," "implementation," "programs," and activities," and determined that "[r]ecords under [the public disclosure provision] thus must relate to fulfilling, performing, carrying out, or putting into effect by means of a definite plan or procedure (1) systems or (2) specific actions to ensure that the State's official list of individuals entitled to vote is current and accurate." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1337-38 (N.D. Ga 2016). As such, not every record relates to implementing a program or activity; only records related to the state's *active* processes for voter list maintenance are covered. *See id.* at 1339 ("If Congress intended a broad disclosure requirement encompassing information more granular than process information, it is unclear why it chose to include the word 'implementation' at all.").

This interpretation is supported by the statutory language immediately following the public disclosure provision. It requires that the "lists of the names of addresses of all persons to

whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made," must be available to the public. 52 U.S.C. § 20507(i)(2). Subsection (d)(2) describes the active process a state must carry out for sending address confirmation notices by prepaid postage to inactive voters, and the process for voters to respond, before the state can remove such voters from its voter registration list. *Id.* § 20507(d)(2). Congress's decision to expressly identify this category of records as one that must be open for inspection under the NVRA illustrates how the public disclosure provision is focused on active processes implementing voter list maintenance. *See In re McDaniel*, 973 F.3d 1083 (10th Cir. 2020) (interpreting statutory phrase "based on the company it keeps"); *see also Kemp*, 208 F. Supp. 3d at 1339 ("Interpreting [the public disclosure provision] to require disclosure of records relating to the processes a State implements to fulfill its NVRA obligations is in harmony with this statutory context.").

      Here, the Secretary has already provided Plaintiff with the records that relate to the process the state implements to fulfill its NVRA obligations. As explained in the November 18, 2021 letter to Plaintiff, the Secretary's staff obtains data from a variety of sources, including but not limited to ERIC data, and then creates and maintains its own record "'showing all the registrants removed from the list of eligible voters for reasons of death for the years 2019, 2020, and 2021.'" Doc. 1-4 (quoting Plaintiff's letter dated June 24, 2021 (Doc. 1-1)). That resulting record is what is then transmitted to Colorado's counties to actually implement list maintenance activities for deceased voters. Doc. 1-4, p. 2; *see Kemp*, 208 F. Supp. 3d at 1339. The ERIC data is simply one of several sources of information the Colorado Department of State receives that it then uses to generate the list maintenance record that counties rely on when performing list

8

maintenance activities. Doc. 1-4, p. 2. Beyond conclusory allegations, Plaintiff fails to allege that the ERIC data concerns the "implementation" of a "program" or "activity" under the NVRA. *See* Doc. 1, ¶ 24; *Ashcroft,* 556 at 678 (conclusory allegations are not presumed true). As such, Plaintiff has not stated a claim for relief under the NVRA.

II.   **Plaintiff's broad construction of the NVRA would create unnecessary conflict with later-enacted federal statutes.**

The above statutory interpretation is confirmed by the adverse and disharmonious impact that Plaintiff's contrary construction would have on two later-enacted federal statutes: (1) the Bipartisan Budget Act of 2013, and (2) the Driver's Privacy Protection Act of 1994. *See Planned Parenthood of the Rocky Mountains Services, Corp. v. Owens,* 287 F.3d 910, 923 n.13 (10th Cir. 2002) (court may interpret a statute by examining other statutes dealing with the same subject as the statute being construed).

***Bipartisan Budget Act of 2013 (2013 Act)***. Prompted by concerns over identity theft, the 2013 Act restricts access to the Social Security Administration's LADMF to only those entities, like ERIC, that meet certain requirements under a Department of Commerce certification program.[4] 42 U.S.C. § 1306c; 15 C.F.R. § 1110.102. A certified entity must show, for example, that it has a "legitimate fraud prevention interest" or "a legitimate business purpose pursuant to a law, governmental rule, regulation, or fiduciary duty[.]" 42 U.S.C. § 1306c(b)(2)(A). A certified

---

[4] Information in the LADMF rendered confidential by the 2013 Act includes: name, social security number, date of birth, and date of death. 42 U.S.C. § 1306c(d). The Social Security Administration originally created an unrestricted version of the DMF in the 1980s as the result of a Freedom of Information Act (FOIA) lawsuit. *See* Staff of H. Comm. on the Budget, 113th Cong., Rep. on Bipartisan Budget Act of 2013, at 262 (Comm. Print 2014), available at https://bit.ly/3HsiUco (last visited March 28, 2022). In the ensuing decades, however, individuals began using the information procured from the public DMF to commit identify theft, prompting the creation of the certification program. *See id.*

entity must also show it has "systems, facilities, and procedures in place to safeguard such information," as well as "experience in maintaining the confidentiality, security, and appropriate use" of the sensitive information. *Id.* § 1306c(b)(2)(B). While certified entities may redisclose information in the LADMF to entities that also meet the certification requirements (like state governments), *see* 15 C.F.R. § 1110.102(4)(i), certified entities must otherwise keep the information strictly confidential or face hefty financial penalties. 42 U.S.C. § 1306c(c); 15 C.F.R. § 1110.200. Entities like state governments that receive LADMF information from certified entities must similarly keep the information confidential or risk both financial penalties and loss of access. 15 C.F.R. § 1110.102(4)(iii); *see also id.* § 1110.200(a)(2) (imposing penalty "whether or not" such person is certified).

Here, the relief Plaintiff seeks is tantamount to an end run around the 2013 certification program, in effect nullifying its confidentiality protections. Plaintiff's complaint acknowledges that ERIC uses confidential LADMF information "to identify voters who have died," which information is transmitted to member states. Doc. 1, ¶ 18. Likewise, ERIC's 2017 annual report, referenced in the complaint (Doc. 1, ¶¶ 12, 18), makes clear that member states receive confidential LADMF information through ERIC. *See* 2017 Annual Report, p. 6. (stating member states "receive the benefits of access to the [DMF], and an assurance that security of the data meets federal standards, as a result of their ERIC membership."). Even Plaintiff's initial request to the Secretary acknowledges as much, yet it nonetheless demands that the Secretary produce "[a]ll ERIC Data" concerning deceased or potentially deceased voters as reflected in the LADMF. *See* Doc. 1-1, p. 1 & n.2.

At bottom, Plaintiff's complaint and its attachments make clear that it seeks to bypass the

2013 certification program and receive confidential LADMF information indirectly from Colorado and ERIC rather than directly from the federal government. Were Colorado to acquiesce to Plaintiff's demands, both it and ERIC could face federal penalties and loss of access to the LADMF. Congress clearly did not intend such an absurd result when passing the 2013 Act, thus confirming that the NVRA never required the disclosure of such information in the first place. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) (courts presume "Congress is aware of existing law when is passes legislation." (quotations omitted)); *WildEarth Guardians v. Nat'l Park Serv.*, 703 F.3d 1178, 1189 (10th Cir. 2013) (courts construe two statutes "harmoniously" even when they "appear to conflict"). If Plaintiff wishes to access LADMF information, its remedy is requesting the information directly from the federal government after meeting the certification criteria. Plaintiff's contrary interpretation guts the certification program, opening up confidential LADMF information to any would-be requester.

**Driver's Privacy Protection Act of 1994**. The second federal act that conflicts with Plaintiff's proposed statutory interpretation is the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C. § 2721, *et seq*. The DPPA prohibits disclosing "personal information" and "highly restricted personal information" about "any individual obtained by [any motor vehicle] department in connection with a motor vehicle record" except in specified circumstances.[5] *Id.* § 2721(a)(1) & (a)(2). "Personal information" is defined expansively as information that "identifies an individual, *including*" several categories of personally identifying information. 18

---

[5] For example, the DPPA permits disclosure "[f]or use by any government agency . . . in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). This exception permits Colorado to share certain voter information obtained through a motor vehicle department with ERIC. *See* Doc. 1, ¶¶ 15-16.

U.S.C. § 2725(3) (emphasis added). Courts have interpreted "including" in the DPPA to indicate the "illustrative but not the limitative nature of the listed examples." *Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 563 (M.D. Penn. 2019) (quotations omitted).

Congress was undoubtedly aware of the NVRA when passing the DPPA just one year later (both were enacted during the 103rd Congress), especially given that Congress in the NVRA expressly required state departments of motor vehicles to include an option to register to vote with every driver's license application. *See* 52 U.S.C. § 20504. The DPPA contains no provision expressly repealing any portion of the NVRA, and repeals by implication are "not favored" and will not be presumed unless Congress's intent is "clear and manifest." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (quotations omitted). This strongly indicates that Congress did not believe the DPPA's restrictions on disclosing personal information conflicted in any way with the NVRA. *See Boockvar*, 431 F. Supp. 3d at 563 (rejecting PILF's argument that the state's DPPA interpretation will "obliterate public inspection rights envisioned by Congress" since Congress "knew of the potential interplay between the DPPA's privacy protections and the NVRA's disclosure mandate.").

In this case, Plaintiff's complaint and the documents it references make clear that it seeks ERIC reports containing confidential personal information that originated from Colorado's motor vehicle departments. The complaint states, for example, that Colorado must provide to ERIC every 60 days "all licensing or identification [records] contained in [Colorado's] motor vehicle database." Doc. 1, ¶ 14. Likewise, according to the complaint, Colorado provides ERIC with similar data from "other agencies within its jurisdiction that perform any voter registration functions, including . . . those required to perform voter registration pursuant to the [NVRA]."

*Id.*, ¶ 15; *see* 52 U.S.C. §§ 20503(a)(1), 20504 (requiring motor vehicle departments to perform voter registration). ERIC in turn "processes data that relates to the maintenance of Members' voter registration lists and provides regular (at least on a monthly basis) reports to each Member." Doc. 1, ¶ 16 (cleaned up). Plaintiffs' broad request to the Secretary sought "All 'ERIC Data,'" defined expansively to include "information [from ERIC] related to voter registration list maintenance." Doc. 1-1, p. 1 & n.1. The Secretary was therefore correct to deny Plaintiffs' request under the DPPA, and Plaintiff fails to state a claim under the NVRA upon which relief can be granted.

Finally, although repeals by implication are not favored, to the extent the NVRA cannot be reconciled with either the 2013 Act or the DPPA, or both, the latter two must prevail. The 2013 Act and the DPPA of 1994 are both more recently enacted than the 1993 NVRA. *See Travelers Ins. Co. v. Panama-Williams, Inc.*, 597 F.2d 702, 704 (10th Cir. 1979). Similarly, both the 2013 Act and the DPPA are "more specific statute[s]" and therefore act as "exception[s] to the more general [NVRA] statute." *WildEarth Guardians*, 703 F.3d at 1189. In particular, the 2013 Act applies to a narrower subset of information—LADMF information—while the NVRA applies more broadly to "all records concerning the implementation of programs and activities" aimed at ensuring up-to-date voter rolls. 52 U.S.C. § 20507(i). The same is true for the DPPA. It applies only to personal information obtained by a motor vehicle department "in connection with a motor vehicle record," 18 U.S.C. § 2721(a), and does not restrict a requester's access under the NVRA to other sources of information. The Secretary here, for example, responded to Plaintiff's NVRA request by providing a comprehensive spreadsheet (entitled "Cancelled_Deceased_2019_2021") that reflected all disclosable records that the Secretary used

13

to conduct list maintenance activities for deceased voters. Doc. 1-4, p. 1.

### III. Plaintiff's unsupported reading would require the Court to conclude that the NVRA impliedly repealed existing privacy statutes.

In addition to conflicting with subsequent federal legislation, Plaintiff's statutory interpretation is at odds with the existing legislative landscape in effect when Congress passed the NVRA in 1993. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 169 (2004) (considering the "background of law" that Congress legislated against when enacting FOIA and interpreting Act to deny access to death-scene photos based on surviving family's privacy interest); *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

The Freedom of Information Act, for example, was enacted in 1966 and states that records are not subject to production if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Congress has specifically recognized that the sensitive information in the LADMF constitutes private information that should not be disclosed under FOIA. *See* 42 U.S.C. § 1306c(e). Nothing in the NVRA suggests a "clear and manifest" intent on Congress's part to repeal these protections by implication. *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (quotations omitted).

Similarly, the Privacy Act of 1974 includes multiple provisions guarding against the unwarranted disclosure of individuals' personal information by government agencies. *See, e.g.*, 5 U.S.C. § 552a(b). Plaintiff's position—that Colorado is legally required to disclose to third parties confidential personal information that originated from either the LADMF or state motor vehicle departments—is impossible to square with the Privacy's Act beneficial purpose of "promot[ing] governmental respect for the privacy of citizens[.]" *Alexander v. F.B.I.*, 971 F.

Supp. 603, 612 (D.D.C. 1997) (quotations omitted).

As other courts have noted, Congress did not draft the NVRA "in a vacuum." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 735 (S.D. Miss. 2014). Rather, Congress enacted the NVRA "thirty-seven years after it passed the Freedom of Information Act . . . and nineteen years after enacting the Privacy Act of 1974, . . . all of which express Congress's concern for individuals' privacy interests. *Id.* "It is hard to imagine that in enacting the NVRA, Congress intended to abrogate all protections provided for by Federal . . . laws against the disclosure of private and confidential information." *Id.* This is especially so in light of the presumption against repeals by implication, which will not be inferred "unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary . . . in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (cleaned up; quotations omitted); *see also Branch v. Smith*, 538 U.S. 254, 273 (2003) ("An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." (quotations omitted)).

No irreconcilable conflict exists between these privacy statutes and the NVRA if the latter is simply interpreted to exclude the sensitive ERIC reports that Plaintiff seeks containing confidential personal information. Plaintiff's broad reading of the NVRA would create unnecessary conflict between the NVRA, FOIA, and the Privacy Act, and should therefore be rejected.

**IV.    The redactions proposed by Plaintiff continue to violate federal privacy law.**

The complaint cites a letter Plaintiff sent to the Secretary stating that it would consent "in

15

this instance" to the ERIC reports being redacted to prevent disclosure of "SSN dates of birth, SSN dates of death, SSN death locations, and full/partial SSN numbers." Doc. 1, ¶ 47. But this redaction proposed by Plaintiff continues to violate federal privacy law for at least two reasons.

First, the 2013 Act does not merely protect dates of birth, social security numbers, and death information. It also prohibits disclosure of *names* contained in the LADMF. 42 U.S.C. § 1306c(d). Plaintiff's complaint does not mention names as a data element that it agrees Colorado could redact from ERIC reports. Doc. 1, ¶ 47.

Second, even if Plaintiff agreed that names could be redacted, disclosing voter identification numbers from ERIC reports would still violate federal privacy law because Plaintiff could easily use the numbers to "re-identify" deceased voters whose names may have originated from the confidential LADMF or state motor vehicle records. The "re-identification" problem occurs when a requester is easily able to match a person's identity to details in the released dataset by "linking" the allegedly anonymized data to "auxiliary" data. *See Cnty. of Los Angeles v. Superior Court*, 65 Cal. App. 5th 621, 651-52 (Cal. Ct. App. 2021) (finding "re-identification" problem presents a "clear potential threat to patient privacy"). As one federal court put it in a FOIA case: "this is called the 'mosaic' or 'compilation' approach and it contemplates that even apparently harmless pieces of information, when assembled together with other data, could reveal otherwise privacy-protected and FOIA-exempt information." *Baser v. Dep't of Veteran Affairs*, No. 13-CV-12591, 2014 WL 4897290, at *4 (E.D. Mich. Sept. 30, 2014). "The Supreme Court has recognized this 'mosaic' approach as a basis for an agency to exempt information from disclosure under the FOIA." *Id.* (citing *CIA v. Sims,* 471 U.S. 159, 178 (1985)); *see also* Paul Ohm, *Broken Promises of Privacy: Responding to the Surprising Failure*

16

*of Anonymization*, 57 UCLA L. REV. 1701, 1703 & 1724 (2010) (summarizing re-identification dilemma and stating "the pervasively held idea that we can protect privacy by simply removing personally identifiable information" is a "discredited approach").

Here, the danger of re-identification through a mosaic approach is clear. Plaintiffs could easily take the unredacted voter identification numbers reflected on ERIC reports and match them to the voter names and identification numbers that appear on Colorado's otherwise public voter registration list.[6] Plaintiff would then know with certainty the identity of those voters who ERIC believes are deceased, including voters who would not otherwise appear on the ERIC report but for their inclusion in confidential records like the LADMF and state motor vehicle records. Indeed, the ease of matching voter identification numbers with voter names is precisely why Plaintiff is willing to consider redaction of other data elements in the first place. This Court should reject Plaintiff's attempt to use a mosaic approach to evade federal privacy laws.

## CONCLUSION

Plaintiff's complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[6] The Secretary's list of cancelled deceased voters that has already been produced to Plaintiff in response to its NVRA request, for example, includes voter identification numbers. *See* Doc. 1-4, p. 2; Doc. 1-2.

Respectfully submitted this 11th day of April, 2022.

PHILIP J. WEISER
Attorney General

s/ Grant T. Sullivan
s/ Stefanie Mann
*GRANT T. SULLIVAN**
Assistant Solicitor General
*STEFANIE MANN**
Senior Assistant Attorney General
Public Officials Unit / State Services Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, Colorado  80203
Telephone:  720 508-6349 (Sullivan)
E-Mail:  grant.sullivan@coag.gov
              stefanie.mann@coag.gov
*Counsel of Record
Attorneys for Defendant Griswold

# CERTIFICATE OF SERVICE

      I hereby certify that on April 11, 2022, I e-filed the foregoing **MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6),** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or e-mail, addressed as follows:

Noel Henry Johnson
Kaylan L. Phillips
Public Interest Legal Foundation
32 East Washington St.
Suite 1675
Indianapolis, IN 46204
njohnson@publicinterestlegal.org
kphillips@publicinterestlegal.org
*Attorneys for Plaintiff*

                                                *s/* Xan Serocki
                                                *Xan Serocki*