# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.,** | |
| *Plaintiff*, | |
| v. | |
| **JENA GRISWOLD,** in her official capacity as Secretary of State for the State of Colorado, | Civil Case No. 1:21-cv-03384-PAB-MEH |
| *Defendant*. | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

STANDARD OF REVIEW .....................................................................................4

ARGUMENT ..........................................................................................................4

I.     The Foundation's Complaint States a Plausible Claim
for an NVRA Violation.................................................................................4

     A.  The ERIC Deceased Reports Are Subject to Public Disclosure
Under the NVRA's Plain Language ...........................................5

     B.  The Secretary Reads Additional Requirements
into the NVRA's Text....................................................................9

II.    There Is No Conflict Between the NVRA and Other Federal Laws With
Respect to Disclosure of Deceased Registrant Records Generally.................12

III.   The NVRA Does Not Conflict with Laws Governing the LADMF................13

     A.  The Foundation Does Not Seek Any Confidential Records ......................13

     B.  Personally Identifying Information Obtained Through An
Independent Source Is Not Subject to LADMF Protections......................13

     C.  Voter Identification Numbers Are Not LADMF Data...............................14

     D.  The Foundation Is Likely Authorized to Receive LADMF Data .............15

IV.   There Is No Indication that ERIC Deceased Reports Implicate
Driver's License Record Data............................................................................16

V.    Neither FOIA Nor the Privacy Act Compel Dismissal....................................17

VI.   If Any Conflicts Remain, the Remedy Is Redaction, Not Dismissal...............19

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

*Cases*

*ACORN v. Edgar*,
　880 F. Supp. 1215 (N.D. Ill. 1995) ...............................................................................19

*Arizona v. Inter Tribal Council of Arizona*,
　570 U.S. 1 (2013) ........................................................................................................19

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ......................................................................................................4

*Bates v. United States*,
　522 U.S. 23 (1997) ......................................................................................................10

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ......................................................................................................4

*Campbell v. United States DOJ*,
　164 F.3d 20, 33 (D.C. Cir. 1998) ...............................................................................18

*Conn. Nat'l Bank v. Germain*,
　503 U.S. 249 (1992) ....................................................................................................11

*Griffin v. Oceanic Contractors*,
　458 U.S. 564 (1982) ....................................................................................................12

*Ill. Conservative Union v. Illinois*,
　No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543 (N.D. Ill. June 1, 2021) .......................5

*Judicial Watch, Inc. v. Lamone*,
　399 F. Supp. 3d 425 (D. Md. 2019) ...............................................................................5

*Judicial Watch, Inc. v. Lamone*,
　455 F. Supp. 3d 209 (D. Md. 2020) ..........................................................................5, 18

*Lamie v. United States Tr.*,
　540 U.S. 526 (2004) ......................................................................................................6

*Morton v. Mancari*,
　417 U.S. 535 (1974) ....................................................................................................19

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,
　507 U.S. 380 (1993) .................................................................................................6, 10

*Project Vote, Inc. v. Kemp*,
　208 F. Supp. 3d 1320 (N.D. Ga. 2016) .......................................... 5, 10, 12, 18-19

*Project Vote/Voting for Am., Inc. v. Long*,
　752 F. Supp. 2d 697 (E.D. Va. 2010) ...............................................................6, 11, 17

*Project Vote/Voting for Am., Inc. v. Long*,
　813 F. Supp. 2d 738 (E.D. Va. 2011) ...........................................................................19

*Project Vote/Voting for Am., Inc. v. Long*,
　889 F. Supp. 2d 778 (E.D. Va. 2012) .........................................................................4, 18

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) ............................................................4, 8-9, 11-12, 18

*Pub. Interest Legal Found., Inc. v. Bellows*,
    No. 1:20-cv-00061-GZS, 2022 U.S. Dist. LEXIS 38875 (D. Me. Mar. 4, 2022).....5, 19

*Pub. Interest Legal Found. v. Bennett*,
    No. H-18-0981, 2019 U.S. Dist. LEXIS 39723 (S.D. Tex. Feb. 6, 2019) .....................4

*Pub. Interest Legal Found., Inc. v. Bennett*,
    No. 4:18-CV-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex. Mar. 11, 2019)...........4

*Pub. Interest Legal Found., Inc. v. Bell*,
    No. 5:19-CV-248-BO, 2019 U.S. Dist. LEXIS 179485 (E.D.N.C. Oct. 16, 2019)......20

*Pub. Interest Legal Found. v. Boockvar*,
    431 F. Supp. 3d 553 (M.D. Pa. 2019) ................................................................. 4, 10-11

*Pub. Int. Legal Found. v. Chapman*,
    No. 1:19-CV-622, 2022 U.S. Dist. LEXIS 60585 (M.D. Pa., Mar. 31, 2022) 4, 9-10, 17

*Pub. Interest Legal Found. v. Matthews*,
    No. 20-cv-3190, 2022 U.S. Dist. LEXIS 40640 (C.D. Ill. Mar. 8, 2022).................5, 19

*Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) ...............................................................................4, 20

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014).....................................................5-7, 10, 18-19

*United States v. Monsanto*,
    491 U.S. 600 (1989)...........................................................................................10

*United States v. Sturm*,
    673 F.3d 1274 (10th Cir. 2012) ..........................................................................10

### Constitutions, Statutes, and Rules

U.S. Constitution, Article VI, Clause 2 ...............................................................19

U.S. Constitution, Article I, Section 4, Clause I................................................19

5 U.S.C. § 552(b)(6) .............................................................................................19

52 U.S.C. § 21083(a)(4)(A) ....................................................................................6

52 U.S.C. § 20507(a)(4)(A) ....................................................................................6

52 U.S.C. § 20507(i)(1) ............................................................... 1-4, 7, 11, 17

15 C.F.R. § 1110.2 ................................................................................................13

15 C.F.R. § 1110.2(a).............................................................................................13

15 C.F.R. § 1110.102(4) .........................................................................................15

15 C.F.R. § 1110.102(4)(ii) .....................................................................................16

15 C.F.R. § 1110.102(a)(1)-(4)..........................................................................13, 15

81 FR 34882..................................................................................................15, 18

Colo. Rev. Stat. § 1-2-302(1)..................................................................................6

Colo. Rev. Stat. § 1-2-302(6)..................................................................................7

Colo. Rev. Stat. § 1-2-302(3.5)(a)..........................................................................6

Colo. Rev. Stat. § 1-2-602(2)-(3)............................................................................7

Colo. Rev. Stat. § 24-72-204(8)(a).........................................................................3

**Other Authorities**

United States Department of Commerce, LADMF Certified List,
    https://ladmf.ntis.gov/docs/DMFcertifiedList.docx....................................................15

ERIC,
    https://ericstates.org/.....................................................................................................7

Plaintiff Public Interest Legal Foundation, Inc. ("Foundation") hereby responds in opposition to Defendant Jena Griswold's ("Secretary") Motion to Dismiss (Doc. 23).

### INTRODUCTION

The Foundation's Complaint alleges that the requested records are used to implement the Secretary's voter list maintenance program and are, therefore, within the scope of the National Voter Registration Act ("NVRA"). (Doc. 1 ¶¶ 14-24.) The Foundation further alleges that the Secretary is denying the Foundation's records request in violation of the NVRA and injuring the Foundation. (Doc. 1 ¶¶ 33-66.) The Foundation has thus stated a plausible claim for relief.

The Secretary's Motion to Dismiss relies on an incorrect interpretation of the NVRA that strays far from the plain-meaning analysis this Court must conduct. In statutory interpretation cases, the statute's plain language is preeminent, and where unambiguous, it is determinative. The NVRA's words unambiguously require public inspection of "all records concerning the implementation" of voter list maintenance programs and activities. 52 U.S.C. § 20507(i)(1). The requested ERIC Deceased Reports are subject to public inspection under the statute's plain meaning because they are records upon which the Secretary relies to determine who belongs on its official list of eligible voters. In fact, the Secretary concedes that she "relies on" the "deceased voter list created by ERIC" to conduct voter list maintenance. (Doc. 1-4 at 2.) Those reports thus squarely "concern" a core voter list maintenance activity under 52 U.S.C. § 20507(i)(1).

There are no irreconcilable conflicts between the NVRA and other federal laws. The Foundation seeks voter list maintenance records, not Social Security Administration or driver's license data. Regardless, any potential conflict exists *solely* because of the Secretary's *voluntary* participation in ERIC. It is thus the Secretary, not the Foundation, that seeks to circumvent federal law through her strategic choices. The Secretary cannot abrogate the NVRA as a matter

of law no matter her potentially good intentions. Nor can the Secretary ignore federal regulations expressly placing the requested data outside the scope of the laws on which the Secretary relies. The Secretary's request for sweeping extra-textual exemptions is plainly inappropriate. In any event, decisions about whether certain records may be withheld or redacted are largely factual questions that are not appropriately resolved at the motion to dismiss stage.

Deciding who is eligible and who is ineligible to vote is not an activity that should occur in secret. Congress agreed and allowed the public to monitor list maintenance decisions through access to public records. The Secretary is nevertheless acting in concert with ERIC to violate explicit federal law and is thereby jeopardizing the voting rights of Colorado's citizenry.

## BACKGROUND

The Foundation is a non-profit, non-partisan, 501(c)(3) organization that specializes in election and voting rights issues. (Doc. 1 ¶ 4.) For its work, the Foundation often relies upon the NVRA, 52 U.S.C. §§ 20501 *et seq*. Section 8(a)(4)(A) of the NVRA requires each state to conduct a "general program" to remove decedents from the voter roll. Section 8(i)(1) of the NVRA acts like a stronger version of the federal Freedom of Information Act ("FOIA"), requiring election officials to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities[1] conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision"),

Since 2012, Colorado has been a member of the Electronic Registration Information Center ("ERIC"). ERIC is a "is a non-profit organization with the declared mission of assisting states to improve the accuracy of America's voter rolls and increase access to voter registration

---

[1] These are referred to as "voter list maintenance" programs or activities.

for all eligible citizens." (Doc. 1 ¶ 9.) From ERIC, Colorado receives "reports that show voters who have moved within their state, voters who have moved out of state, **voters who have died**, duplicate registrations in the same state and individuals who are potentially eligible to vote but are not yet registered." (Doc. 1 ¶ 17 (hereafter, "ERIC Deceased Reports") (emphasis added).) Colorado is contractually obligated to use the ERIC Deceased Reports to conduct voter list maintenance. (Doc. 1 ¶¶ 20-21, 23.)

More than ten months ago, on June 24, 2021, the Foundation contacted the Secretary's office and requested the following records, pursuant to the NVRA's Public Disclosure Provision:

1.  All "ERIC Data" received from ERIC during the years 2019, 2020, and 2021 concerning registered voters identified as deceased or potentially deceased.

2.  All reports and/or statewide-voter-registration-system-generated lists showing all registrants removed from the list of eligible voters for reason of death for the years 2019, 2020, and 2021. Such lists will optimally include unique voter identification numbers, county or locality, full names, addresses, and dates of birth.

(Doc. 1-1 (hereafter, the "Request").) On August 18, 2021, the Secretary's office denied the Foundation's request for the ERIC Deceased Reports. (Doc. 1-2 (hereafter, the "Denial Letter").) The Secretary's office granted in part and denied in part the Foundation's second request and provided a list of former registrants removed from Colorado's voter roll for the reason of death during the period between 2019 and 2021, but withheld "birth days or months" on the grounds that "C.R.S. 24-72-204(8)(a)" prohibits disclosure of that information. (Doc. 1-2.)

On August 20, 2021, the Foundation notified the Secretary, Colorado's chief election official, that she and her office are in violation of the NVRA for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i). (Doc. 1 ¶ 42; Doc. 1-3 (hereafter, the "Notice Letter").) The Foundation explained that its request could be satisfied if the Secretary produced the ERIC Deceased Reports with nothing more than voter identification

numbers. (Doc. 1 ¶ 47.) On November 18, 2021, the Secretary's office confirmed its denial of

the Foundation's request for the ERIC Deceased Reports. (Doc. 1 ¶ 48.)

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.   The Foundation's Complaint States a Plausible Claim for an NVRA Violation.

The Foundation's allegations allow the Court "to draw the reasonable inference," *Iqbal*,

556 U.S. at 678, that the ERIC Deceased Reports are records "concerning the implementation of

programs and activities conducted for the purpose of ensuring the accuracy and currency of

official lists of eligible voters." 52 U.S.C 20507(i)(1).

Courts in multiple circuits have interpreted the Public Disclosure Provision expansively

and found that it compels broad disclosure of voter list maintenance records. The following are

types of records or activities held to be or plausibly be within the NVRA's scope:

- Applications for voter registration with all personally identifying information except for Social Security numbers. *Project Vote/Voting for Am.*, *Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) (affirming order granting summary judgment); *Project Vote/Voting for Am., Inc. v. Long*, 889 F. Supp. 2d 778, 782 (E.D. Va. 2012).

- Records concerning "efforts" to "identify noncitizen registrants." *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266 (4th Cir. 2021) (vacating order granting motion to dismiss).

- Records "created pursuant to a system designed to identify ineligible voters based on their noncitizen status." *Pub. Interest Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561 (M.D. Pa. 2019) (denying motion to dismiss), *summary judgment granted by Pub. Int. Legal Found. v. Chapman*, No. 1:19-CV-622, 2022 U.S. Dist. LEXIS 60585 (M.D. Pa., Mar. 31, 2022).

- Records concerning registrants who did not satisfy the citizenship requirements for voter registration. *Pub. Interest Legal Found. v. Bennett*, No. H-18-0981, 2019 U.S. Dist. LEXIS 39723, at *2 (S.D. Tex. Feb. 6, 2019) (denying motion to dismiss), *adopted by Pub. Interest*

4

*Legal Found., Inc. v. Bennett*, No. 4:18-CV-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex. Mar. 11, 2019).

- "The date voter registration applications were signed by an applicant"; "[t]he date applications were entered into the [voter registration] Database"; "[e]ach change in an applicant's voter registration status"; "[w]hether an election official manually, instead of mechanically, changed the status of one or more applicants"; "[r]easons other than the most recent reason why an applicant was rejected, canceled, or otherwise not added to the voter roll"; "[t]he specific reason why applicants, assigned a status reason of 'Error,' 'Hearing,' or 'Reject,' were canceled"; '[r]ecords for canceled applicants with a status reason other than one of the eleven options in the drop-down menu in the Database" and, records concerning letters sent to applicants "to the extent the letters concern the status or completeness of an individual's application or otherwise relate to the evaluation of an individual's eligibility." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1341-44 (N.D. Ga. 2016).

- The "complete list of all Mississippi voters [in] all status categories" with "each voter's name, unique identification number, residential and mailing addresses, voting precinct code, registration date, voter status, last date voted, and congressional district assignment." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014).

- The "voter registration list for [a] County that includes fields indicating name, home address, most recent voter activity, and active or inactive status," *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 446 (D. Md. 2019) (granting motion for summary judgment), and date-of-birth information, *Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209 (D. Md. 2020).

- "[T]he most recent voter registration list for Illinois, including fields for registered voters' names, full dates of birth, home addresses, most recent voter activity, unique voter IDs, and voting status." *Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543, at *5 (N.D. Ill. June 1, 2021).

- "Defendants acted in violation of the Public Disclosure Provision of the NVRA when Defendants refused to make available for viewing and photocopying the full statewide voter registration list." *Pub. Interest Legal Found. v. Matthews*, No. 20-cv-3190, 2022 U.S. Dist. LEXIS 40640, at *27 (C.D. Ill. Mar. 8, 2022) (denying motion to dismiss and granting the Foundation's motion for summary judgment).

- Maine's "Voter File" is "subject to disclosure under the NVRA" and "Plaintiff has pleaded sufficient facts that, when taken as true, establish a plausible claim of obstacle preemption" against various use-restrictions for Voter File. *Pub. Interest Legal Found., Inc. v. Bellows*, No. 1:20-cv-00061-GZS, 2022 U.S. Dist. LEXIS 38875, at *13-14 (D. Me. Mar. 4, 2022).

### A. The ERIC Deceased Reports Are Subject to Public Disclosure Under the NVRA's Plain Language.

The parties agree that the Court should begin with the statutory text. (Doc. 23 at 6-7.) "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."

*Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (citations and quotations omitted). "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (citations and quotations omitted). Under these principles, the requested records fit squarely within the NVRA's text.

The Eastern District of Virginia concluded that "a program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010); *see also True the Vote*, 43 F. Supp. 3d at 719-20 ("A list of voters is 'accurate' if it is 'free from error or defect' and it is 'current' if it is 'most recent.'") (citations omitted).

The Secretary conducts programs and activities to keep Colorado's voter roll current and accurate. In fact, the NVRA, a federal law, requires Colorado to "conduct a general *program* that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of … the death of the registrant." 52 U.S.C. § 20507(a)(4)(A) (emphasis added). The Help America Vote Act ("HAVA"), another federal law, requires Colorado to have "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4), (a)(4)(A).

Colorado law further requires the Secretary to "maintain the master list of registered electors of the entire state on as current a basis as is possible." Colo. Rev. Stat. § 1-2-302(1). With respect to deceased registrants, Defendant "shall coordinate the computerized statewide voter registration list with state agency records on death." Colo. Rev. Stat. § 1-2-302(3.5)(a). The Secretary must also "forward to each county clerk and recorder monthly the information received

from the state registrar of vital statistics concerning persons registered to vote in the county who have died," and "[t]he county clerk and recorder shall cancel the registration of any elector who is deceased…." Colo. Rev. Stat. § 1-2-602(2)-(3).

The Secretary is also afforded broad discretion to conduct additional list maintenance programs. "The secretary of state shall determine and use other necessary means to maintain the master list of registered electors on a current basis." Colo. Rev. Stat. § 1-2-302(6). The Secretary has exercised her discretionary authority to join ERIC and sign the Membership Agreement.

Colorado's membership in ERIC is a "program" or "activity" within the purview of the NVRA because it is conducted to make sure Colorado's registration records and eligible voter list are "errorless" and contain the "most recent" information for each registrant. Indeed, ERIC's "sole mission" is to "improve the accuracy of America's voter rolls and increase access to voter registration for all eligible citizens." https://ericstates.org/ (last accessed April 29, 2022).

The remaining question for the Court is whether the ERIC Deceased Reports "concern" the "implementation" of Colorado's voter list maintenance activities. 52 U.S.C. § 20507(i)(1). "The word 'concern' is a broad term meaning 'to relate or refer to.'" *True the Vote*, 43 F. Supp. 3d at 719 (quoting Webster's Third New International Dictionary of the English Language 470 (2002)). "To 'implement' means to 'fulfill' or 'carry out.'" *True the Vote*, 43 F. Supp. 3d at 719 (quoting The Random House Dictionary of the English Language 304 (1966)).

The Foundation alleges that the Secretary uses the ERIC Deceased Reports to correct or update voter registration records so that those records are accurate. (Doc. 1 ¶¶ 19-22.) By doing so, the Secretary fulfills—at least in part—its federal (NVRA and HAVA) and state (Colorado Revised Statutes) voter list maintenance obligations.

The Secretary even concedes that the ERIC Deceased Reports "concern" or "relate to" her voter list maintenance activities. She explains:

> [T]he Secretary's staff obtains data from a variety of sources, including but not limited to ERIC data, and then creates and maintains its own record "'showing all the registrants removed from the list of eligible voters for reasons of death for the years 2019, 2020, and 2021.'" That resulting record is what is then transmitted to Colorado's counties to actually implement list maintenance activities for deceased voters. The ERIC data is simply one of several sources of information the Colorado Department of State receives that it then uses to generate the list maintenance record that counties rely on when performing list maintenance activities.

(Doc. 23 at 8-9.) In other words, the Secretary uses the ERIC Deceased Reports to identify deceased registrants and then instruct the counties to remove those registrants from the voter roll. The ERIC Deceased Reports "concern" voter list maintenance activities in every sense of the word.

*Project Vote v. Long* reinforces this conclusion. In that case, the plaintiff filed an NVRA action to compel disclosure of certain completed applications for voter registration. *Project Vote*, 682 F.3d at 332-33. The district court granted the plaintiffs summary judgment and the Fourth Circuit Court of Appeals affirmed that judgment. Addressing the records' relation to Virginia's "implementation" of voter list maintenance activities, the court explained,

> The requested applications are relevant to carrying out voter registration activities because they are "the means by which an individual provides the information necessary for the Commonwealth to determine his eligibility to vote." *Project Vote*, 752 F. Supp. 2d at 707. Without verification of an applicant's citizenship, age, and other necessary information provided by registration applications, state officials would be unable to determine whether that applicant meets the statutory requirements for inclusion in official voting lists. Thus, completed applications not only "concern[ ] the implementation of" the voter registration process, but are also integral to its execution.

*Project Vote*, 682 F.3d at 336.

The same reasoning supports the Foundation here. Instead of citizenship and age, the Secretary and her office use the ERIC Deceased Reports to evaluate and verify whether each

registrant is alive—perhaps the most fundamental voter qualification. Those reports are thus essentially "the means by which an individual provides the information necessary for [the Secretary] to determine his eligibility to vote." *Id*. at 336. As in *Project Vote*, so here: the ERIC Deceased Reports not only "concern[] the implementation of" Colorado's voter list maintenance program, "but are also integral to its execution." *Id*.

### B. The Secretary Reads Additional Requirements into the NVRA's Text.

The Secretary gives two reasons why the ERIC Deceased Reports are nevertheless outside the NVRA's scope. Neither has merit. First, the Secretary claims the ERIC Deceased Reports are outside the NVRA's scope because county officials are ultimately responsible for removing deceased registrants. (Doc. 23 at 8.) This argument fails because the NVRA is not limited to records used by the person who causes the cancellation to occur. The NVRA casts a much wider net. Using the ordinary meaning of the words Congress actually used, records are subject to public disclosure if they simply "relate to" the "implementation" of a voter list maintenance activity.

*Pub. Int. Legal Found. v. Chapman*, No. 1:19-CV-622, 2022 U.S. Dist. LEXIS 60585 (M.D. Pa., Mar. 31, 2022), supports the Foundation on this point. In *Chapman*, the Court ordered disclosure of records initially used by the Secretary of the Commonwealth to identify potentially ineligible registrants. The Court explained, "Even if ultimate responsibility for removing voters from the rolls lays in the hands of individual counties, the database was nonetheless used to augment the reliability of voter rolls by identifying registrants in need of further 'scrutiny' by the counties[.]" *Chapman*, 2022 U.S. Dist. LEXIS 60585, at *14.

The same is true here. The Secretary "uses" the ERIC Deceased Reports to identify registrants who may be ineligible by reason of death. (Doc. 23 at 8.) The Secretary then

"generate[s] the list maintenance record that counties rely on when performing list maintenance activities." (*Id.* at 8-9.) As in *Chapman*, the ERIC Deceased Reports are "used to augment the reliability of voter rolls by identifying registrants in need of further 'scrutiny' by the counties[.]" *Chapman*, 2022 U.S. Dist. LEXIS 60585, at *14.

Second, the Secretary claims that the NVRA is limited to so-called "active processes." (Doc. 23 at 7.) Again, the Secretary is adding language that Congress never passed. The Secretary's imagined limitation also does not help her because the requested records plainly relate to Colorado's active process to identify and remove deceased registrants, a process mandated by federal law, Colorado law, and the ERIC Membership Agreement. But again, that is a factual issue, not a defense available to support a Rule 12 motion.

Consistent with Supreme Court guidance, courts have construed "program" and "activity" to "carry their ordinary, contemporary, common meaning." *Pioneer Inv. Servs.*, 507 U.S. at 388. Those courts have concluded that "[a] 'program' is 'a schedule or system under which action may be taken towards a desired goal' and an 'activity' is 'a specific deed, action, function, or sphere or action.'" *True the Vote*, 43 F. Supp. at 719; *Kemp*, 208 F. Supp. 3d at 1337-38 (same). The word "active" is found nowhere in these definitions and the "[c]ourts must 'ordinarily resist reading words or elements into a statute that do not appear on its face.'" *United States v. Sturm*, 673 F.3d 1274, 1279 (10th Cir. 2012) (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)). "[I]nterpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature," *United States v. Monsanto*, 491 U.S. 600, 611 (1989), and this Court should decline the invitation to add words to the NVRA.

Other courts have both explicitly and implicitly rejected similar attempts to limit the NVRA's scope in a way that contravenes its plain language. In *Public Interest Legal Foundation*

*v. Boockvar*, the court held that the NVRA's "Disclosure Provision contemplates an *indefinite* number of programs and activities," not just those concerning death and relocation, as the defendants argued. 431 F. Supp. 3d 553, 560 (M.D. Pa. 2019) (emphasis in original).

The Secretary's interpretation is also undermined by *Project Vote*, in which the Fourth Circuit concluded that "the process of reviewing voter registration applications is a 'program' and 'activity,' covered by the NVRA "because it is carried out in the service of a specified end— maintenance of voter rolls[.]" *Project Vote*, 682 F.3d at 335. The Secretary likewise reviews the ERIC Deceased Reports to evaluate whether each registrant is eligible to vote. Evaluating the eligibility of voters on the basis of death (or for any reason whatsoever)—and the attendant action of cancelling ineligible registrations—determines "whether persons belong on the lists of eligible voters, thus ensuring the accuracy of those lists." *Project Vote*, 752 F.Supp.2d at 703. Determining who is and is not eligible for voter registration is the *sine qua non* of "activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" under 52 U.S.C. § 20507(i)(1). The relevant statutory language being unambiguous, judicial inquiry is complete. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).

The Public Disclosure Provision is not limited to so-called "active processes" by word, context, or intent. Nor does it exclude records simply because their source is a third party. Finding that it does would conceal from public scrutiny other fundamental records election officials use to grant and remove voting rights. A registrant erroneously thrown off the voter roll would be barred from viewing records that led to her improper cancellation. This is precisely the sort of behavior that Congress intended to make transparent, but the Secretary believes she is allowed to hide. As the Northern District of Georgia prudently recognized,

> Limiting the disclosure requirement to a set of general process implementation records without the production of records to show the results of the processes and

activities put into place would hinder the public's ability to "protect the integrity of the electoral process" and to ensure voting regulation programs and activities are implemented in a way that accomplishes the purposes of the statute and are not executed in a manner that is "discriminatory and unfair." See 52 U.S.C. § 20501.

*Kemp*, 208 F. Supp. 3d at 1340.

The Secretary's interpretation ensures that disenfranchising mistakes will stay hidden from public scrutiny. Such an interpretation would thus produce an absurd result, and "absurd results are to be avoided." *Griffin v. Oceanic Contractors*, 458 U.S. 564, 575 (1982).

## II. There Is No Conflict Between the NVRA and Other Federal Laws With Respect to Disclosure of Deceased Registrant Records Generally.

There is plainly no conflict between the NVRA and other federal laws when it comes to disclosure of the requested records *qua* records. Whether deceased registrant records are within the NVRA's scope is a distinct question from whether *specific information* contained in specific records should be *redacted*. To the Foundation's knowledge, every court to interpret the NVRA has considered those two issues separately. For example, the Fourth Circuit found that completed voter registration applications were "unmistakably" within the NVRA's scope, *Project Vote*, 682 F.3d at 336, but separately upheld the lower court's exclusion of Social Security numbers—and only that data, *id*. at 339. None of the other federal laws the Secretary cites precludes, or even addresses, disclosure of deceased registrant records. At best for the Secretary, these are factual questions that are not appropriately resolved at the Rule 12 stage.

## III. The NVRA Does Not Conflict with Laws Governing the LADMF.

### A. The Foundation Does Not Seek Any Confidential Records.

The Secretary is incorrect in asserting the Foundation seeks records protected from disclosure. The Limited Access Death Master File ("LADMF") is a product made available by the Department of Commerce which includes the "the name, social security account number,

date of birth, and date of death of deceased individuals" who died "during the three-calendar-year period beginning on the date of the individual's death." 15 C.F.R. § 1110.2(a). To access the LADMF *directly* from the Commerce Department, an individual or entity must certify that she meets certain requirements. *See* 15 C.F.R. § 1110.102(a)(1)-(4). ERIC allegedly compares state voter roll data to LADMF data to identify deceased registrants. (Doc. 1 ¶ 19.)

The Foundation does not seek LADMF records. The Foundation seeks records provided by ERIC to the Secretary that were generated by ERIC for voter list maintenance purposes. Records from third parties, as compared to the LADMF itself, are not subject to any statutory or regulatory prohibition on disclosure under the law, or under the NVRA. Because the Foundation does not seek or want LADMF data, there is no conflict.

### B. Personally Identifying Information Obtained Through An Independent Source Is Not Subject to LADMF Protections.

There is a second reason the NVRA does not conflict with the LADMF in these circumstances: the ERIC Deceased Reports do not contain LADMF data. Federal regulations governing access to the LADMF provide,

> As used in this part, Limited Access DMF **does not include** an individual element of information (name, social security number, date of birth, or date of death) in the possession of a Person, whether or not certified, but obtained by such Person through a source independent of the Limited Access DMF. If a Person obtains, or a third party subsequently provides to such Person, death information (i.e., the name, social security account number, date of birth, or date of death) independently, such information in the possession of such Person is not part of the Limited Access DMF or subject to this part.

15 C.F.R. § 1110.2 (emphasis added).

In other words, information obtained through an independent source is not subject to LADMF disclosure restrictions, even if that same information is contained in the LADMF. For example, if a registrant's name is contained in both LADMF records and voter registration

records, the registrant's name is not confidential. This is significant because ERIC independently

obtains registration data, *e.g.* name and address, from the Secretary every sixty days. (Doc. 1 ¶

14.) ERIC compares that information to LADMF data and tells the Secretary which Colorado

registrants are likely deceased. (Doc. 1 ¶¶ 16-17.) In other words, the ERIC Deceased Reports

contain information that was independently obtained from Colorado's voter registration records,

and the personally identifying data in those reports is therefore not subject to the LADMF's

disclosure prohibitions.

In any event, the extent to which personally identifying information is contained in ERIC

Deceased Reports is a factual question that is appropriately answered following discovery and, if

necessary, *in camera* review.

### C. Voter Identification Numbers Are Not LADMF Data.

To avoid this present conflict, the Foundation offered to receive the ERIC Deceased

Reports with only voter identification numbers. (Doc. 1 ¶ 47.) The Secretary refused that offer.

(Doc. 1 ¶ 48.) But voter identification numbers are not protected by LADMF regulations because

they are not contained in the LADMF. This is therefore not a valid basis to withhold this specific

data.[2]

The Secretary claims it cannot disclose voter identification numbers because the

Foundation could compare those voter identification numbers to the Colorado's public voter

registration list and "know with certainty the identity of those voters who ERIC believes are

deceased." (Doc. 23 at 17.) To accept this argument, the Court must judicially amend federal

laws to add limitations Congress did not add. Regardless, the Secretary's argument is again

defeated by federal regulation expressly placing independently obtained data outside the

---

[2] To be clear, the Foundation maintains its request for the ERIC Deceased Reports in their entirety.

protection of the LADMF. 15 C.F.R. § 1110.2. In this instance, the registrant's name would be independently obtained from *two* sources—the Secretary's registration records and the Foundation's copy of Colorado's public voter registration list. Furthermore, the fact that a registrant is deceased is not protected LADMF data. Regulatory history records explain,

> NTIS points out that "fact of death," i.e., the fact that a person is no longer living, confirmation of which was identified by some commenters as important for legitimate business purposes, is not an element of the statutory definition of the term "Death Master File," and will not be considered by NTIS to be equivalent to "date of death" under the final rule.

81 FR 34882, 34883. There is thus nothing unlawful about the Foundation's "know[ing] with certainty the identity of those voters who ERIC believes are deceased." (Doc. 23 at 17.)

### D.  The Foundation Is Likely Authorized to Receive LADMF Data.

Even if LADMF data appears in the ERIC Deceased Reports—which is a factual question not properly before this Court at this time—the Foundation is likely authorized to receive it. Contrary to what Secretary suggests, a certified entity may share LADMF data with an uncertified entity if the uncertified entity satisfies certain criteria. *See* 15 C.F.R. § 1110.102(4). In fact, federal regulations ask certified entities to disclose if they "intend[] to disclose such deceased individual's DMF to any person." 15 C.F.R. § 1110.102(a)(1)-(4).

The Secretary is proof that uncertified entities may receive records generated using LADMF data. The Commerce Department publishes a list of persons and entities certified to receive LADMF data: https://ladmf.ntis.gov/docs/DMFcertifiedList.docx. As of April 7, 2022, the Secretary and her office are not reported as being so certified. The Secretary receives records generated using LADMF data either because (1) her office nevertheless satisfies the necessary criteria, even while they are not certified by the Commerce Department, or (2) the data contained in the ERIC Deceased Reports is independently obtained and not LADMF data to begin with.

The Foundation believes it, too, satisfies the criteria to receive LADMF data. As alleged, the Foundation "analyzes the programs and activities of state and local election officials in order to determine whether lawful efforts are being made to keep voter rolls current and accurate in accordance with federal and state law, and to determine whether eligible registrants have been improperly removed from voter rolls." (Doc. 1 ¶ 4.) The Foundation believes that due to these activities and others it has a "legitimate fraud prevention interest," 15 C.F.R. § 1110.102(4)(ii), and is therefore eligible to receive the same data the Secretary receives from ERIC.

## IV.    There Is No Indication that ERIC Deceased Reports Implicate Driver's License Record Data.

The Secretary also raises the Driver's Privacy Protection Act ("DPPA") as a reason to dismiss the complaint entirely. (Doc. 23 at 11-14.) The DPPA prohibits the disclosure of "personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a)(1). For starters, the Foundation does not seek "motor vehicle record" data. The Foundation seeks voter list maintenance records created by ERIC and used by the Secretary to remove registrants. The DPPA is irrelevant here.

Although the Secretary is required to send ERIC "all licensing or identification contained in the motor vehicles database" every sixty days (Doc. 1 ¶ 15) little, if anything, is known about how—or even *if*—that specific data is used to identify deceased registrants. The Secretary does not say, possibly because the Secretary does not know. Recall, ERIC also identifies registrants who have changed residence. (*See* Doc. 1 ¶ 17.) Driver's license data reveals a registrant's residence, and it is more likely that ERIC uses that data to confirm residency, not vitality.

Prior to discovery, there is simply no way for the Foundation, or the Court, to evaluate the Secretary's unsworn claim that the requested records implicate any protected DPPA data.

This especially true for the Foundation's alternative offer to receive the ERIC Deceased Reports with nothing more than voter identification numbers. (Doc. 1 ¶ 47.)

In the lone NVRA case where the DPPA was held to apply, the court applied it narrowly, according to its text, and, importantly, in a way that did not invalidate the NVRA.

> [The DPPA] applies only to the personal information obtained from DMV motor vehicle records and information derived from that personal information. Our holding **does not** protect information derived from non-DMV sources even when that information is included in a record containing personal information obtained from DMV records.

*Chapman*, 2022 U.S. Dist. LEXIS 60585, at *16 (emphasis added). The court's holding thus acts much like the LADMF's "independently obtained data" exception. For example, if a registrant's name and address are obtained by ERIC from Colorado's voter registration records—which they are—that information is not protected by the DPPA. The Court continued, "when only some of the information is or derives from personal information obtained from DMV records, the record or document must be disclosed with only personal information or derived information redacted." *Id*. Dismissal on this basis is plainly inappropriate.

## V.    Neither FOIA Nor the Privacy Act Compel Dismissal.

Permitting disclosure of ERIC Deceased Reports does not require the Court to invalidate either FOIA or the Privacy Act. (Doc. 23 at 14.) For starters, Congress chose a different standard for the NVRA. "[T]he statute identifies the information which Congress specifically wished to keep confidential," *Project Vote*, 752 F. Supp. 2d at 710, and that information is limited to two things not implicated here, 52 U.S.C. § 20507(i)(1). Congress deliberately opted for broad disclosure because "[p]ublic disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections."

*Project Vote*, 682 F.3d at 339-40. The Secretary asks this Court to rewrite the NVRA to include exemptions Congress did not intend.

In no case has FOIA or the Privacy Act been considered grounds to *dismiss* an NVRA claim. Even in the limited instances where FOIA or the Privacy Act were considered relevant, the court permitted limited *redactions*, and only for highly sensitive data like Social Security numbers and birth dates—not names and addresses. *See Project Vote*, 208 F. Supp. 3d at 1345. Even one of those courts "acknowledge[d] that there may be circumstances that justify the disclosure of voter registrants' birthdates." *True the Vote*, 43 F. Supp. 3d at 739. Other courts have considered dates of birth within the NVRA's scope, *Judicial Watch*, 455 F. Supp. 3d 209; *Project Vote*, 889 F. Supp. 2d at 781 ("Congress has made its intent clear with regard to disclosure of an applicant's address, signature, and birth date; disclosure of that information, unlike SSNs, is required by the statute.") "It is not the province of this court … to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting NVRA Section 8(i)(1)[.]" *Project Vote*, 682 F.3d at 339.

Furthermore, the interests underlying FOIA and the Privacy Act are far more attenuated in this action, where the requested records concern deceased registrants. "[D]eath clearly matters, as the deceased by definition cannot personally suffer the privacy-related injuries that may plague the living." *Campbell v. United States DOJ*, 164 F.3d 20, 33 (D.C. Cir. 1998). Moreover, as explained, "fact of death" is not protected LADMF data. 81 FR 34882, 34883. Last, the Secretary has undermined the entire premise of her privacy arguments by disclosing the statewide list of registrants canceled for reason of death, which includes the names and addresses of thousands of deceased registrants. (Doc. 1 ¶ 41.) That information—which was correctly

disclosed—is also likely contained in the ERIC Deceased Reports. Considering all the foregoing, the Secretary cannot credibly maintain that disclosure of those reports would nevertheless constitutes a "clearly unwarranted invasion of personal privacy" under FOIA. (Doc. 23 at 14 (quoting 5 U.S.C. § 552(b)(6).)

To the extent the Secretary relies on state law to avoid disclosure, those laws are without force because the NVRA, as a federal enactment, is superior to conflicting state laws under the Constitution's Elections and Supremacy Clauses. *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 9 (2013); *see also ACORN v. Edgar*, 880 F. Supp. 1215, 1222 (N.D. Ill. 1995); *Project Vote*, 813 F.Supp.2d at 743 (E.D. Va. 2011); *Bellows*, No. 1:20-cv-00061-GZS, 2022 U.S. Dist. LEXIS 38875, at *14 ("Having concluded that the Voter File falls within the ambit of the NVRA's Public Disclosure Provision, the Court concludes that Plaintiff has pleaded sufficient facts that, when taken as true, establish a plausible claim of obstacle preemption."); *Matthews*, No. 20-cv-3190, 2022 U.S. Dist. LEXIS 40640, at *27 ("The Foundation has also shown that Section 5/1A-25 conflicts with, and is preempted by, the Public Disclosure provision insofar as Section 5/1A-25 prohibits the photocopying and duplication of the same list.").

## VI.      If Any Conflicts Remain, the Remedy Is Redaction, Not Dismissal.

 "[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Wholesale exclusion of the ERIC Deceased Reports is the antithesis of giving the NVRA effect. The remedy, if it is needed at all, is redaction, and only to the extent it does not prevent achievement of the NVRA's transparency goals. *See Project Vote*, 813 F. Supp. 2d at 743; *True the Vote*, 43 F. Supp. 3d at 736-39; *Kemp*, 208 F. Supp. 3d at 1345;

*N.C. State Bd. of Elections*, 996 F.3d at 267 (explaining that privacy concerns "do[] not render the requested documents affiliated with potential noncitizens immune from disclosure under the plain language of the NVRA").

In *Pub. Interest Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO, 2019 U.S. Dist. LEXIS 179485 (E.D.N.C. Oct. 16, 2019), the Foundation sought, pursuant to the NVRA, records concerning defendants' efforts to identify non-United States citizens on the voter rolls. *Id*. at *3. The district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6), holding that those records were categorically outside the NVRA's scope. *Id*. at *12. On appeal, the Fourth Circuit vacated the decision and remanded the case for further proceedings. *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021). The court explained, "Because discovery was not conducted, we cannot discern on this record whether the Foundation may be entitled to disclosure of some of the documents requested." *Id*. at 259. It would likewise be inappropriate to resolve this case prior to discovery.

## CONCLUSION

For these reasons, the Secretary's Motion should be denied.

Dated: May 2, 2022.

For the Plaintiff Public Interest Legal Foundation:

    /s/ Noel H. Johnson
Noel H. Johnson*
Kaylan L. Phillips*
PUBLIC INTEREST LEGAL FOUNDATION
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
kphillips@PublicInterestLegal.org
*Admitted to the bar of the U.S. District Court for the District of Colorado*

*Attorneys for Plaintiff Public Interest Legal Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2022, I electronically filed the foregoing using the Court's

ECF system, which will serve notice on all parties.

        /s/ Noel H. Johnson

Noel H. Johnson
Counsel for Plaintiff
njohnson@PublicInterestLegal.org