IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03384-PAB-MEH

PUBLIC INTEREST LEGAL FOUNDATION, INC., Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Secretary of State for the State Colorado, Defendant.

**REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Plaintiff's reading of the NVRA not only contradicts the statute's plain meaning, it requires adding facts not pled by Plaintiff to the complaint. More problematic, however, is that Plaintiff does not reconcile its broad NVRA interpretation with Congress's other privacy-related statutes. Because Plaintiff's position creates conflict that must be resolved in the Secretary of State's favor, the complaint should be dismissed for failure to state a claim.

**I.      Plaintiff's conclusory allegations fail to state a claim under the NVRA.**

Plaintiff asserts that the Secretary conducts programs and activities under the NVRA to keep Colorado's voter rolls current and accurate. In support, Plaintiff cites to various federal and state laws requiring or permitting Colorado to review its voter rolls. Doc. 25, pp. 6-7. Even assuming this as true, Plaintiff fails to make any connection between these legal provisions and the requested ERIC data. These legal provisions say nothing about ERIC data or how it is used. Nor do the legal provisions make reference to how ERIC data concerns the "implementation" of "programs and activities" under the NVRA. This falls well short under *Twombly*'s heightened pleading standard. *Newsom v. Ottawa Cnty. Bd. of Comm'rs*, 511 F. App'x 718 (10th Cir. 2013) (Gorsuch, J.) (complaint that fails to explain how defendant is liable "'will not do,'" quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In addressing whether the ERIC data "concern[s]" the "implementation" of Colorado's voter list maintenance activities, Plaintiff now alleges that the Secretary uses ERIC data to correct or update voter registration records so that those records are accurate. Doc. 25, p. 7 (citing Doc. 1, ¶¶ 19-22). But the portion of the complaint Plaintiff cites does not say that. The cited paragraphs merely allege that the Secretary's agreement with ERIC sets forth certain timetables for reaching out to unspecified voters. *See* Doc. 1, ¶¶ 19-22. Plaintiff cannot survive a motion to dismiss by manufacturing unpled allegations that do not appear in the complaint. *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (plaintiff "may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").

Plaintiff claims the Secretary is adding language to the NVRA by pointing out its limitation to active processes. But Plaintiff fails to acknowledge that other courts have observed that the NVRA's use of "implementation" limits the applicable universe of records to those concerning active "processes" for voter list maintenance programs and activities, as made plain by common dictionary definitions of "implement": "to give practical effect to and ensure the actual fulfillment *by concrete measures*," and "to put into effect *according to or by means of a definite plan or procedure*." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1337 (N.D. Ga. 2016) (emphasis added) (citations omitted). Plaintiff fails to allege how ERIC data relates to any "concrete measures" or a "definite plan or procedure." It simply asserts that the mere fact of the Secretary's "membership in ERIC is a 'program' or 'activity' within the purview of the NVRA." Doc. 25, p. 7. Yet this allegation does not appear in the complaint. And equating mere membership in a non-profit organization with a "program" or "activity" is a drastic

2

oversimplification of the NVRA's plain language.

Plaintiff also lists ten cases in which courts purportedly ordered some records disclosed under the NVRA. Doc. 25, pp. 4-5. But those cases are limited to voter registration applications, voter files, and similar voter-specific records. None involves data derived from the confidential LADMF. Beyond conclusory allegations, some of which do not even appear in the complaint, Plaintiff fails to allege that the ERIC data concerns the "implementation" of a "program" or "activity" under the NVRA.

## II. Plaintiff's response confirms it seeks confidential information protected by later-enacted federal privacy statutes.

Plaintiff does not dispute the Secretary's core legal argument that the Bipartisan Budget Act of 2013 (2013 Act) and the Driver's Privacy Protection Act of 1994 (DPPA) protect the sensitive information at issue and that these more recent statutes prevail in the event of a conflict with the NVRA. Instead, Plaintiff offers three reasons why its broad interpretation of the NVRA's public disclosure provision can be reconciled with these other federal laws. None "nudge[s]" Plaintiff's claim from conceivable to plausible under *Twombly*, 550 U.S. at 570.

*A. Confidential LADMF and DPPA information does not lose its protected status when transferred to a new format*. Plaintiff first insists that "[r]ecords from third parties," such as ERIC, "as compared to the LADMF itself," are not protected from disclosure. Doc. 25, p. 13. Plaintiff makes a similar argument regarding DPPA information. *See* Doc. 25, p. 16 (stating Plaintiff seeks "voter list maintenance records created by ERIC," and not DPPA-protected records). Plaintiff's argument appears to be that if a third party inserts LADMF or DPPA information into the third party's own document, the information loses its protected status. But Plaintiff cites no on-point authority for this odd proposition. Indeed, the relevant federal statutes

3

reveal Plaintiff's position is untenable. The 2013 Act protects "information contained" in the LADMF, not just the government records that contain the protected information. 42 U.S.C. § 1306c(a). The DPPA similarly protects "personal information" "obtained by [any motor vehicle] department in connection with a motor vehicle record[.]" 18 U.S.C. § 2721(a)(1). Were Plaintiff's position correct, it would allow LADMF and DPPA information recipients to do an end-run around the statutory restrictions by simply incorporating the protected information into a document of the recipient's own creation. Congress clearly did not intend such an absurd result.

*B. Plaintiff misconstrues and misapplies the independent source rule*. Next, Plaintiff argues that the information it requests is obtained by the Secretary through "an independent source," and therefore is not subject to the LADMF disclosure restrictions under 15 C.F.R. § 1110.2. Doc. 25, p. 13. It is of course correct that information appearing in non-protected records is not subject to LADMF disclosure restrictions simply because the same data elements also appear in the LADMF. So, if a state maintains a list of names of deceased individuals derived from its vital records bureau that is not sourced from the LADMF, the information on that list would not be subject to LADMF disclosure restrictions. But that uncontroversial proposition does not entitle Plaintiff to relief here, for two reasons.

One, Plaintiff's reliance on the independent source rule contravenes its own complaint allegations, which must be accepted as true at this stage. The *only* source mentioned in the complaint from which the Secretary receives voter death information is ERIC, Doc. 1, ¶¶ 17, 19, and ERIC receives its voter death information from the LADMF.[1] *Id.*, ¶ 18. While the complaint

---

[1] These complaint allegations also help explain why Plaintiff requested ERIC deceased reports spanning only the last three calendar years. Doc. 1, ¶ 33. Deaths occurring within the last three calendar years is the exact period that is subject to LADMF protection. 42 U.S.C. § 1306c(a). By

4

alleges that ERIC member states transmit *other* types of information to ERIC that is then processed and distributed to member states (e.g., "voter files," and "licensing or identification" information), none relates to a voter's death. *See id.*, ¶¶ 14-15. Plaintiff's attempt to suggest otherwise improperly attempts to add facts to the complaint.

Two, even if the complaint alleged that the Secretary receives the requested information from an independent source (it doesn't), Plaintiff nonetheless seeks to apply the independent source rule in a far more sweeping manner than the regulation contemplates. Plaintiff is not merely seeking to obtain non-LADMF records that are not sourced from the LADMF but may contain some data elements that the LADMF also contains. Instead, Plaintiff's express purpose is to learn *which deceased voters the LADMF contains*.[2] *See* Doc. 1-1, p. 1 n.2 (stating in its request that Plaintiff seeks "ERIC Data" sourced from the "Death Master File," which ERIC uses "to identify voters who have died so they can be removed from ERIC states' voter rolls."). Under its view, the fact that the state's vital records bureau maintains a list of names and death dates would mean that a LADMF recipient could disclose that the same information *appears in the LADMF*. Plaintiff even argues that the mere fact that the names of individuals listed in the LADMF are also found on other lists, such as state voter registration lists, allows disclosure of

---

now attempting to untether its NVRA request from the LADMF, Plaintiff would apparently have the Court believe that it is sheer coincidence that the period covered by its request matches exactly the period covered by the LADMF's disclosure restrictions.

[2] The attachments to Plaintiff's complaint confirm this. When the Secretary provided Plaintiff with the full list of deceased voters that Colorado counties use for list maintenance—but which was not sourced from the LADMF—Plaintiff objected. *See* Docs. 1-2, 1-3, 1-5. According to Plaintiff, it is entitled to deceased voter information *as reflected in ERIC deceased reports*, which the complaint acknowledges are derived from the LADMF. Doc. 1, ¶ 18. If Plaintiff's statement that it "does not seek LADMF" information is in fact true, Doc. 25, p. 13, then Plaintiff fails to explain why the non-LADMF-sourced list it already received is insufficient.

5

the fact that those names appear *in the LADMF*. *See* Doc. 25, pp. 13-14 (asserting that "[i]f a registrant's name is contained in both LADMF records and voter registration records, the registrant's name is not confidential"). But that interpretation cannot be right as it would nullify the LADMF's primary goal: preventing the contents of a particular federal agency's file from being disclosed. *See* 15 C.F.R. § 1110.2 (defining "Death Master File" as "[i]nformation on the name, social security account number, date of birth, and date of death of deceased individuals *maintained by the Commissioner of Social Security*[.]" (emphasis added)). Accordingly, Plaintiff's reliance on the independent source rule is unavailing.

*C. The complaint does not allege that Plaintiff satisfies LADMF's certification criteria.* Plaintiff's third and final response to the Secretary's reliance on the LADMF's disclosure restrictions is that it is "likely authorized" to receive LADMF data because it "believes" that it has a "legitimate fraud prevention interest" under 15 C.F.R. § 1110.102(a)(4)(ii). Doc. 25, pp. 15-16. According to Plaintiff, an uncertified entity, like the Secretary's office, is eligible to receive LADMF-protected information if it "nevertheless satisfies the necessary criteria." *Id.* at 15. The complaint, however, does not allege that the Secretary's withholding of ERIC data reports is unlawful based on Plaintiff's eligibility for LADMF certification. Plaintiff's three letters to the Secretary demanding production of the ERIC data also fail to mention Plaintiff's eligibility for LADMF certification. *See* Docs. 1-1, 1-3, 1-5. Like the complaint, Plaintiff's letters rely solely on the NVRA's public disclosure provision as the basis for demanding production. Plaintiff cannot use its response to the motion to dismiss to inject new allegations into the complaint or its attachments. *See In re Qwest*, 396 F. Supp. 2d at 1203.

Moreover, even if the complaint had demanded production on this basis, Plaintiff fails to

address a host of other certification criteria. The entity must have, for example, "systems, facilities, and procedures in place to safeguard such information, and experience in maintaining the confidentiality, security, and appropriate use of such information." 42 U.S.C. § 1306c(b)(2)(B). Plaintiff fails to allege or argue that it possesses these capabilities.

### III. The complaint admits that ERIC deceased reports contain federally protected information, rendering discovery unnecessary.

Plaintiff also resists dismissal by suggesting that discovery is necessary to determine "the extent to which personally identifying information [derived from the LADMF] is contained in Eric Deceased Reports[.]" Doc. 25, p. 14. Plaintiff makes a similar argument regarding DPPA information. *Id.* at 16. Plaintiff's own complaint reveals why this argument fails. Discovery is improper unless the facts pled, if true, would warrant relief under the claims raised. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (standard for proper pleadings "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," as "only a complaint that states a plausible claim for relief survives a motion to dismiss").

Here, Plaintiff's own complaint alleges that ERIC deceased reports contain information derived from both the confidential LADMF and the state's motor vehicle departments. As to the LADMF, paragraph 18 states, for example, that "[t]he Social Security Death Master File . . . is used by ERIC to identify voters who have died so that they can be removed from ERIC states' voter rolls." Doc. 1, ¶ 18. This same statement appears in Plaintiff's June 24, 2021, letter to the Secretary, which is attached to the complaint. Doc. 1-1, p. 1 n.2. Similarly, paragraph 49 incorporates, without dispute, the statement in the Secretary's November 18, 2021, letter that Colorado receives a monthly "deceased voter list created by ERIC based on a comparison of data sources that ERIC obtains from a variety of sources, including but not limited to the state voter

7

registration list and the LAMDF created by the Social Security Administration." Doc. 1, ¶ 49. That ERIC creates the deceased reports it sends to the Secretary by identifying individuals appearing on the LADMF *who also appear on Colorado's voter registration rolls* does not change the fact that its reports contain LADMF-derived protected information.

The same is true for DPPA-protected information. Paragraph 14 states that Colorado must provide ERIC with "all licensing or identification contained in [Colorado's] motor vehicle database," Doc. 1, ¶ 14, while paragraph 15 says Colorado must provide ERIC with similar data from "other agencies within its jurisdiction that perform any voter registration functions, including . . . those required to perform voter registration pursuant to the [NVRA]." *Id.*, ¶ 15; *see also* 52 U.S.C. §§ 20503(a)(1), 20504 (requiring motor vehicle departments to perform voter registration). Last, paragraph 16 states that ERIC "process[es]" the provided data related to "the maintenance of [Members'] voter registration lists and provide[s] regular (at least on a monthly basis) reports to [each] Member." Doc. 1, ¶ 16. Discovery is thus unnecessary because Plaintiff has already alleged, and the Secretary has assumed as true for purposes of her motion, that ERIC deceased reports contain information derived from the LADMF and state motor vehicle records.

**IV.     Plaintiff's remaining arguments do not avoid dismissal for failure to state a claim.**

Plaintiff's remaining points do not avoid dismissal. The Secretary's motion argued, for example, that Plaintiff's construction of the NVRA would conflict with Congress's preexisting privacy-related enactments in the Freedom of Information Act (FOIA) and the Privacy Act of 1974. Doc. 23, p. 14-15. Plaintiff does not quarrel with the Secretary's characterization of Congress's privacy policies in these statutes. Nor does Plaintiff dispute that repeals by implication will not be inferred absent Congress's "'clear and manifest intent.'" *Id.* at 14

8

(quotations omitted). Instead, Plaintiff points to Congress's competing policy in the NVRA, stating the public disclosure provision "promotes transparency in the voting process[.]" Doc. 25, p. 17 (quotations omitted). But nowhere does Plaintiff argue that Congress, when passing the NVRA, clearly and manifestly intended to repeal its preexisting privacy policies. Given this concession, the Court cannot ascribe the broad scope to the NVRA's public disclosure provision that Plaintiff suggests. Doing so would clearly conflict with FOIA and the Privacy Act.

Plaintiff's remaining attempts to reconcile its expansive interpretation of the NVRA's public disclosure provision with Congress's other enactments are unavailing. Plaintiff suggests that the "fact of death" is not protected information. Doc. 25, p. 18. The Secretary agrees in part.[3] That is why she was able to provide Plaintiff with a list of deceased voters that was not sourced from the LADMF or state motor vehicle records. Doc. 1-2. But as Plaintiff's cited cases point out, the *sources* of the information matter. *See, e.g.*, *Pub. Interest Legal Found. v. Chapman*, No. 19-CV-622, 2022 WL 986012, at *6 (M.D. Penn. Mar. 31, 2022) (stating DPPA's protection "applies only to the personal information obtained from DMV motor vehicle records *and* information derived from that personal information." (emphasis added)). Because Plaintiff's allegations make clear that it seeks protected information derived from the LADMF and state motor vehicle records, and that it is not satisfied with similar data derived from non-protected

---

[3] The Secretary disagrees with Plaintiff's suggestion that privacy-related concerns evaporate after an individual is deceased. Doc. 25, p. 18. Congress created the confidential LADMF and its certification program precisely because criminals used the prior unrestricted version of the DMF to steal deceased individuals' identities. *See* Doc. 23, p. 9 n.4. Family members and heirs of deceased individuals obviously continue to suffer adverse consequences when the identity of their deceased loved one is stolen. The 2013 Act's certification program was designed to prevent such theft. *See* 81 Fed. Reg. 34882 (June 1, 2016) (stating the program "reduc[es] opportunities for identity theft and restrict[s] information sources used to file fraudulent tax returns.").

9

sources, its complaint fails to state a claim upon which relief can be granted.

Finally, Plaintiff asserts that, in the event of a conflict, redaction is the proper remedy rather than dismissal. Doc. 25, pp. 19-20. But as the Secretary's motion explained, Plaintiff's proposed redaction approach would still reveal the identifies of those deceased voters on the LADMF. Doc. 23, pp. 15-17. Plaintiff offers no response to the Secretary's discussion of the "re-identification" problem, and the cases endorsing redaction cited by Plaintiff contain no analysis of the issue. *See Ramsey v. Sw. Corr. Med. Group, Inc.*, No. 18-cv-1845-WJM-KLM, 2019 WL 3252181, at *20 (D. Colo. July 19, 2019) (granting motion to dismiss claim where plaintiff "concede[d]" issue by offering "effectively no response at all"). Tellingly, Plaintiff fails to acknowledge that the deceased voter list it *already* received from the Secretary is tantamount to a redacted list. That list complies with Plaintiff's request in all respects *except* it was not sourced from the LADMF. It therefore serves the same purpose as redaction—providing as much disclosable information as possible while still withholding confidential data and sources. Plaintiff's continued objection is explainable on only one ground: it wants to learn the identities of those deceased voters *in the LADMF*. Granting Plaintiff the relief it seeks, even in redacted form, would nullify the 2013 Act's protections by revealing the contents of the LADMF.

For these reasons, Plaintiff's claim should be dismissed for failure to state a claim.

Dated: May 26, 2022

PHILIP J. WEISER
Attorney General

/s Grant T. Sullivan

*Grant T. Sullivan*, Assistant Solicitor General
*Stefanie Mann,* Senior Assistant Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6349
Email: grant.sullivan@coag.gov; stefanie.mann@coag.gov
*Attorneys for Defendant Jena Griswold*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 26, 2022, I e-filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6),** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or e-mail, addressed as follows:

Noel Henry Johnson  
Kaylan L. Phillips  
Public Interest Legal Foundation  
32 East Washington St.  
Suite 1675  
Indianapolis, IN 46204  
njohnson@publicinterestlegal.org  
kphillips@publicinterestlegal.org  
*Attorneys for Plaintiff*

                                          *s/* Xan Serocki  
                                          *Xan Serocki*