# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Docket no. 1:20-cv-00061-GZS |
| v. | ) <br> ) |
| SHENNA BELLOWS, in her official capacity as the Secretary of State for the State of Maine, | ) <br> ) <br> ) <br> ) |
| Defendant. | ) |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Motions for Summary Judgment filed by Plaintiff Public Interest Legal Foundation Inc. (ECF No. 74) and Defendant Shenna Bellows (ECF No. 81).[1]  Having considered the Motions and the related filings (ECF Nos. 73, 77-79, 84-86), the Court GRANTS Plaintiff's Motion (ECF No. 74) and DENIES Defendant's Motion (ECF No. 81) for the reasons stated herein.

**I.    LEGAL STANDARD**

A party is entitled to summary judgment if it appears, based on the record before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party, and a fact is 'material' if it has the potential of affecting the outcome of the case."  Taite v. Bridgewater State Univ., Bd.

---

[1] Defendant's Motion is marked on the docket as ECF No. 81 but available at ECF No. 80, along with her Response to Plaintiff's Motion.  The Court cites to ECF No. 80 herein to refer to both Defendant's Motion and her Response.

Exhibit A

of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (cleaned up).  The party moving for summary judgment must demonstrate an absence of evidence that supports the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (cleaned up); see Fed. R. Civ. P. 56(e).  "That evidence, however, cannot 'rely on improbable inferences, conclusory allegations, or rank speculation.'"  Snell v. Neville, 998 F.3d 474, 486 (1st Cir. 2021) (alterations in original omitted) (quoting Enica v. Principi, 544 F.3d 328, 336 (1st Cir. 2008)).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment for the moving party."  In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993).  "However, summary judgment is improper when the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." Morales-Melecio v. United States (Dep't of Health and Hum. Servs.), 890 F.3d 361, 368 (1st Cir. 2018) (cleaned up).  "When determining if a genuine dispute of material fact exists, [courts] look to all of the record materials on file, including the pleadings, depositions, and affidavits without evaluating the credibility of witnesses or weighing the evidence."  Taite, 999 F.3d at 93 (cleaned up).  The existence of cross-motions for summary judgment does not change the standard for construing the undisputed facts.  Rather, the Court is required to "view each motion separately and draw all reasonable inferences in favor of the respective non-moving party."  Roman Catholic Bishop v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013).

Exhibit A

District of Maine Local Rule 56 prescribes a detailed process by which the parties are to present to the Court the "material facts . . . as to which the moving party contends there is no genuine issue." D. Me. Loc. R. 56(b). This local rule requires each statement of material fact to be "followed by a citation to the specific page or paragraph of identified record material supporting the assertion." D. Me. Loc. R. 56(f). A party opposing a motion for summary judgment must then file an opposing statement in which it admits, denies, or qualifies the moving party's statements, with citations to supporting evidence, and in which it may set forth additional facts, again with citations to supporting evidence. See D. Me. Loc. R. 56(c). In constructing the narrative of undisputed facts for purposes of summary judgment, the Court deems any statement with a supporting record citation admitted but "may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." D. Me. Loc. R. 56(f).

## II.     BACKGROUND[2]

Plaintiff, the Public Interest Legal Foundation, Inc. ("Plaintiff" or "PILF"), "is a 501(c)(3) non-partisan, public interest organization" that "seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation." (Def. Responses to Pl. Statement of Material Facts (ECF No. 79) ("Def. Resp. SMF"), PageID # 806.) It uses "records and data complied through [federal and state] open records laws" to: "analyze[] the programs and activities of state and local election officials in order to determine whether lawful efforts are being made to keep voter rolls current and accurate"; and "produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its

---

[2] The Court has drawn the limited factual narrative that follows from the parties' joint stipulation of material facts, as well as their individual statements of material facts and responses to opposing statements. See ECF Nos. 73, 79, 85. The remaining portion of this section sets out the relevant procedural history, as well as the statutory background at issue in this case.

3

Exhibit A

organizational mission." (Id.)[3] Defendant Shenna Bellows, the Secretary of State for the State of Maine ("Defendant" or the "Secretary"), "is Maine's chief election official and 'the coordinator of state responsibilities under the National Voter Registration Act of 1993.'" (Joint Stipulation of Material Facts (ECF No. 73) ("JSMF"), Page ID # 631 (citing 21-A M.R.S.A. § 180).)

"For many years, Congress left it up to the States to maintain accurate lists of those eligible to vote in federal elections, but in 1993, with the enactment of the National Voter Registration Act (NVRA), Congress intervened." Husted v. A. Philip Randolph Inst., 138 S. Ct. 1833, 1838 (2018). "The NVRA 'erect[s] a complex superstructure of federal regulation atop state voter-registration systems.'" Id. (quoting Arizona v. Inter Tribal Council of Arizona, Inc., 570 U.S. 1, 5 (2013)). It requires states to, inter alia:

> maintain for at least 2 years and [] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

Since 2007, Maine has maintained a computerized voter registration system that contains "the name and registration information of every legally registered voter in the State." (Pl. Responses to Def. Statement of Material Facts (ECF No. 85) ("Pl. Resp. SMF"), PageID # 879.) Under Maine law, "information contained electronically in the central voter registration system and any information or reports generated by the system are confidential and may be accessed only by municipal and state election officials for the purposes of election and voter registration

---

[3] PILF "uses a state's voter roll and other voter registration and voting records to monitor, study, and evaluate that particular state's voter list maintenance activities and also those of other jurisdictions and states." Def. Resp. SMF (ECF No. 79), PageID # 811.

Exhibit A

administration," along with certain other individuals or entities for delineated purposes. 21-A M.R.S.A. § 196-A(1).

On October 17, 2019, PILF sent a letter to the Secretary requesting an electronic copy of Maine's "statewide voter registration list" (the "Voter File")[4] pursuant to the Public Disclosure Provision. (ECF No. 55-1; see JSMF, Page ID #s 630-31.)[5]  The Voter File is stored in Maine's central voter registration system. (Pl. Resp. SMF, PageID # 881); see 21-A M.R.S.A. § 196-A(1)(B). PILF acknowledged in its letter that it did not meet any of Maine's statutory criteria then in effect for access to the Voter File. (See ECF No. 55-1); see also 21-A M.R.S.A. § 196-A(1) (Supp. 2021) ("Access to data from the central voter registration system"), amended by P.L. 2021 ch. 310, §§ 1–2 (eff. Oct. 18, 2021). PILF also claimed that Maine's denial of access to the Voter File violated the Public Disclosure Provision. (See ECF No. 55-1.) After further communications with PILF, the Secretary ultimately concluded in early February 2020 that she did not have authority to release the Voter File to PILF. (See generally ECF Nos. 55-2–55-7; see also JSMF, PageID #s 630-31.) On February 19, 2020, PILF filed suit against the Secretary seeking declaratory and injunctive relief under the NVRA. (ECF No. 1.)

In June 2021, the Governor of Maine signed into law a new exception to the general confidentiality regime prohibiting disclosure of the Voter File ("Exception J"). See P.L. 2021, ch. 310 § 2.  Under Exception J, an "individual or organization that is evaluating Maine's compliance

---

[4] The Voter File consists of the following information: "the voter's name, residence address, mailing address, year of birth, enrollment status, electoral districts, voter status, date of registration, date of change of the voter record if applicable, voter participation history, voter record number and any special designations indicating uniformed service voters, overseas voters or township voters." 21-A M.R.S.A. § 196-A(1)(B); see Pl. Resp. SMF, PageID # 881.

[5] The parties agree that ECF Nos. 55-1 through 55-7 represent several letters and emails they exchanged between October 2019 through early February 2020. See JSMF, PageID #s 630-31. Accordingly, the Court cites to those underlying exhibits.

5

with its voter list maintenance obligations may . . . purchase" the Voter File.  21-A M.R.S.A. § 196-A(1)(J).  The amended statute also provides for privacy protections that limit the use and dissemination of voters' data.  Specifically, anyone obtaining the Voter File under Exception J is forbidden to:

> (1) Sell, transfer to another person or use the voter information or any part of the information for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations; or
>
> (2) Cause the voter information or any part of the voter information that identifies, or that could be used with other information to identify, a specific voter, including but not limited to a voter's name, residence address or street address, to be made accessible by the general public on the Internet or through other means.

Id.  Under the amended statute, a violation of Exception J is "a civil violation for which a fine of not more than $1,000 may be adjudged."  Id. § 196-A(5).[6]  "[E]ach voter's information" that is publicly shared in violation of Exception J "constitutes a separate offense" under the statute.  See id.

To obtain the Voter File, an applicant organization must complete a standardized form.[7]  The form reminds an applicant seeking the Voter File under Exception J that the data is "[o]nly for use by an individual or organization to evaluate the State's compliance with NVRA list maintenance obligations."[8]  It also requires an applicant to certify that it understands the

---

[6] Those who have previously violated 21-A M.R.S.A. §§ 196-A(1) or 196-A(4) face an increased fine threshold of $5,000 for any subsequent violation.  See 21-A M.R.S.A § 196-A(5)(B).

[7] See Fact Sheet on Obtaining Data and Instructions for Completing a Request for Obtaining Data from Maine's CVR – October, 2021 Version, https://www.maine.gov/sos/cec/elec/data/2021-10%20CVR%20Data%20Request%20Form%20Facts%20and%20Instructions.doc (last visited March 28, 2023); see also JSMF, PageID # 631.

[8] See Request for Obtaining Data from Maine CVR – October 2021 Version, https://www.maine.gov/sos/cec/elec/data/2021-10%20Request%20Form%20for%20Obtaining%20Data%20from%20CVR.doc (last visited March 28, 2023); see also JSMF, PageID # 631.

Exhibit A

information received from Maine's Central Voter Registration system "is subject to the restrictions on use and redistribution of data, as provided in 21-A MRSA, section 196-A."[9]

After these statutory changes took effect in October 2021, and with the Court's leave, PILF filed an Amended Complaint (ECF No. 55). The Amended Complaint alleges three separate violations of the NVRA: (1) denial of access to the Voter File (Count I); (2) impermissible restrictions on use of the Voter File (Count II); and (3) impermissible fines stemming from those restrictions (Count III). (Am. Compl. (ECF No. 55), PageID #s 507-10.) On March 4, 2022, the Court issued an order dismissing Count I on the basis that "no live controversy exist[ed] regarding access to the data PILF seeks" because "the newly created Exception J to the Maine Voter File disclosure statute" would allow PILF to "obtain without the Court's assistance information previously inaccessible to it." (Mot. to Dismiss Order (ECF No. 61), PageID # 592.) The Court also concluded that PILF's preemption-based challenges in Count I were "appropriately addressed under Counts II and Count III." (Id.) In evaluating Counts II and III, the Court determined that the Voter File falls within the ambit of the Public Disclosure Provision and is therefore subject to disclosure under the NVRA. (See id., PageID #s 595-96.)[10] The Court ultimately concluded that

---

[9] Request for Obtaining Data from Maine CVR, supra note 8.

[10] The Secretary asserts in her Motion for Summary Judgment that the Court should reconsider this conclusion because "the Court was limited to considering the allegations in the [Amended] [C]omplaint" and therefore "was not privy to certain additional facts now available in the summary judgment record." Def. Mot. (ECF No. 80), PageID # 853; see Def. Resp. SMF, PageID # 805. Those "categories of additional facts" are (1) "the highly attenuated relationship between the Voter File and the list-maintenance programs and activities conducted by the Secretary"; and (2) the Secretary's undertaking of "discrete initiatives over the years to conduct NVRA-approved maintenance of Maine's voter rolls." Def. Mot., PageID #s 853-54. According to the Secretary, "[t]hese material facts demonstrate that the Voter File is not . . . a record 'concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" Id., PageID # 854 (quoting 52 U.S.C. § 20507(i)(1)). The Court does not find cause to disturb its prior determination, which is consistent with those from several other courts. See, e.g., Illinois Conservative Union v. Illinois, No. 20 C 5542, 2021 WL 2206159, at *5 (N.D. Ill. June 1, 2021) (collecting cases concluding "that the NVRA's reference to 'records'

Exhibit A

"resolution of the preemption issues raised by Counts II and II [] depend[ed] on the development of a fuller factual record, as well as on interpretation of the restrictions Maine's law actually imposes." (Id., PageID # 597.)[11]  As such, it declined to dismiss Counts II and III. (See id.)

To date, PILF has not submitted a request form, or paid the requisite fee, for the Voter File. (See Pl. Resp. SMF, PageID #s 883-884; Flynn Aff. (ECF No. 77), PageID # 747.)  The Secretary has not provided PILF with the Voter File. (JSMF, PageID # 631.)

## III.  DISCUSSION

Plaintiff moves for summary judgment on Counts II and III on the basis that the Public Disclosure Provision of the NVRA preempts Exception J's restrictions on the Voter File's use. (See generally Pl. Mot. (ECF No. 74).)[12]  Defendant, in turn, moves for summary judgment on the basis that Exception J "does not conflict with the purposes of Congress in enacting the NVRA and thus is not preempted." (Def. Mot. (ECF No. 80), PageID # 827.)  Because there is no genuine

---

. . . includes voter list data"); Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 335-36 (4th Cir. 2012) (applications to register to vote are "records" under the Public Disclosure Provision).

[11] More specifically, the Court "acknowledge[d] uncertainty as to how Maine will enforce and interpret the privacy protections imbedded into Exception J." Mot. to Dismiss Order, PageID # 594.  To date, it has remained unclear the extent to which Maine will enforce the privacy protections of Exception J.  The parties have not identified, and the Court has not found, any decisions by Maine state courts regarding Exception J.  As detailed below, however, the Secretary has shared her interpretation of Exception J and its privacy protections.

[12] To the extent that Plaintiff also "asks the Court to reconsider its ruling that [Plaintiff's] denial-of-access claim (Count I) is moot and enter judgment in [Plaintiff]'s favor," the Court declines this request. Pl. Reply (ECF No. 84), PageID # 875 (citation omitted).  The Court previously dismissed Count I not only because "the newly created Exception J" allowed Plaintiff to obtain the Voter File (albeit, under certain conditions) but also because "Plaintiff's theory of 'functional' denial of access" of the Voter File was "a preemption-based challenge to the conditions."  Order on Mot. to Dismiss, PageID # 592.  The Court addresses herein those preemption-based challenges, which as it previously held, "are appropriately addressed under Counts II and III, where they are raised directly." Id.  In the absence of any evidence that PILF made an actual request for access under Exception J, the Court sees no basis to reconsider Count I.

8

Exhibit A

dispute of material fact,[13] the question before the Court is a legal one: does the NVRA preempt Exception J?[14]

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000). "Preemption has three branches: 'express,' 'field,' and 'conflict.'" Maine Forest Prod. Council v. Cormier, 51 F.4th 1, 6 (1st Cir. 2022) (citation omitted). Obstacle preemption, which is an "offshoot of conflict preemption," "is implicated when 'the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Arizona v. United States, 567 U.S. 387, 399 (2012)).[15] In this case, Plaintiff "challenges the following [] restrictions and attached fines" as obstacles to the accomplishment of the NVRA's purposes:

> (1) the prohibition on selling, transferring, or using the Voter File for 'for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations," (ECF No. 55 ¶¶ 78-86) ("Use Ban"), (2) the prohibition on causing any identifying information to be made accessible by the public, (id. ¶ 49) ("Make-Available Ban"); (3) the prohibition on using the Voter File to enforce the NVRA, (id. ¶ 47) ("Enforcement Ban"); and, (4) the fines imposed for violating those prohibitions, (id. ¶¶ 87-94) ("Fines").

(Pl. Mot., PageID # 643; see Pl. Reply (ECF No. 84), PageID # 863.)[16]

---

[13] The Court acknowledges the parties' qualification or denial of certain portions of the opposing statements of material fact. See generally Def. Resp. SMF & Pl. Resp. SMF. However, the Court concludes that none of these factual disputes are material to the resolution of Plaintiff's remaining claims.

[14] The Court's determination as to whether the NVRA preempts Exception J also necessarily applies to the fines imposed by 21-A M.R.S.A. § 196-A(5) for a violation of Exception J. See Pl. Mot., PageID # 652; Def. Mot., PageID # 854.

[15] Because the parties focus their arguments solely on obstacle preemption, the Court follows their lead and does not discuss other preemption types.

[16] In her Motion for Summary Judgment, Defendant characterizes Plaintiff's preemption challenge as a "facial" one and therefore asserts that PILF "bears the burden to establish . . . that 'no set of circumstances exist under which the [Maine statute] would be valid.'" See Def. Mot., PageID # 836 (quoting NCTA—

Two principles govern the interpretation of preemption claims. "First, the purpose of Congress is the ultimate touchstone in every pre-emption case." Wyeth v. Levine, 555 U.S. 555, 565 (2009) (internal quotation marks omitted). "Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied," a presumption against preemption applies until rebutted by the "clear and manifest purpose of Congress." Id. (internal quotation marks and alterations omitted). As the Court previously explained, however, a "presumption against preemption does not apply in this case." (Mot. to Dismiss Order, PageID # 594); see Inter Tribal, 570 U.S. at 14 (concluding that "the presumption against pre-emption sometimes invoked in [] Supremacy Clause cases" does not apply to "Elections Clause legislation" such as the NVRA); U.S. Const., Art. I, § 4, cl. 1 (providing that states shall prescribe the times, places, and manner of congressional elections but that Congress "may at any time by [l]aw make or alter such [r]egulations").

To discern Congress's intent behind the NVRA, the Court "focus[es] first on the statutory language" and then the statute's "purpose, history, and the surrounding statutory scheme." Massachusetts Delivery Ass'n v. Coakley, 769 F.3d 11, 17 (1st Cir. 2014) (citation omitted); see Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990). As this Court previously recognized, the plain language of the Public Disclosure Provision requires the disclosure of statewide voter registration lists, including the Voter File at issue here. (See Order on Mot. to Dismiss, PageID #s 595-96); 52 U.S.C. § 20507(i)(1). "Although Section 8(i)(1) generally requires disclosure of applicable records, it creates exceptions 'to the extent that such records relate (1) to a declination

---

The Internet & Television Ass'n v. Frey, 7 F.4th 1, 17 (1st Cir. 2021)). Plaintiff denies that it has brought a facial challenge and points to certain restrictions and fines in Exception J that it asserts are obstacles to achieving the NVRA's goals and Plaintiff's intended activities. See Pl. Reply, PageID #s 864-66. To the extent Plaintiff's Amended Complaint could be read as asserting a facial challenge, the Court construes its recent disavowal of such a facial challenge as a waiver.

to register to vote or (2) to the identity of a voter registration agency through which any particular voter is registered.'" Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 336 (4th Cir. 2012) (citation omitted). The Voter File does not fall within either of these two exceptions. The statutory language is also clear that Congress enacted the NVRA to: "increase the number of eligible citizens who register to vote" in federal elections, "enhance[] the participation of eligible citizens as voters" in those elections, "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b); see Husted, 138 S. Ct. at 1838 ("The [NVRA] has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls."). As this Court previously concluded, Congress furthered these purposes by "creat[ing] both the Public Disclosure Provision and a private enforcement mechanism available in the event of a state's violation of the Provision." (Mot. to Dismiss Order, PageID # 594 (citing 52 U.S.C. §§ 20507, 20510).)

Maine law restricts the use of information disclosable under the Public Disclosure Provision. More specifically, Exception J prohibits the use of the Voter File "for any purpose that is not directly related to evaluating the State's compliance with its voter list maintenance obligations." 21-A M.R.S.A. § 196-A(1)(J). Based on the plain meaning of the statutory language, the Court finds that Exception J would prohibit an organization such as Plaintiff from using the Voter File to evaluate *another* state's compliance with its voter list maintenance obligations[17] or

---

[17] Exception J, as well as the other portions of Maine's election statute, does not define "State." See generally 21-A M.R.S.A. §§ 1-1207. The Secretary maintains that Exception J's reference to "the State" "does not necessarily mean Maine specifically," as "confirm[ed]" by "Maine's equivalent of the Dictionary Act." Def. Mot., PageID # 849; see 1 M.R.S.A. § 72(21) ("'State,' used with reference to any organized portion of the United States, may mean a territory or the District of Columbia."). Even if Exception J refers to Maine specifically, the Secretary asserts, the "use of Maine's list to cross-reference voter data with other states' lists for evaluation purposes is closely related to the evaluation of Maine's own list" and is therefore permissible under Exception J's terms. Def. Mot., PageID # 850. The Court is not persuaded. First, the Court agrees with Plaintiff that 1 M.R.S.A. § 72(21) does not suggest that "State" as used therein refers to

Case No. 1:21-cv-03384-PAB-MEH   Document 41-1   filed 04/07/23   USDC Colorado   pg 12
Case 1:20-cv-00061-GZS   Document 87   Filed 03/28/23   Page 12 of 18   PageID #: 914
of 18

from publicly releasing the Voter File's data. See id.; see also Est. of Joyce v. Com. Welding Co., 55 A.3d 411, 415 (Me. 2012) ("[W]e first look to the plain meaning of the statutory language, and 'construe that language to avoid absurd, illogical or inconsistent results.'" (citation omitted)). It would also arguably prohibit the use of the Voter File to enforce the NVRA.[18]

The Public Disclosure Provision's disclosure mandate, meanwhile, does not allow a state to impose these restrictions. See 52 U.S.C. § 20507(i)(1). Additionally, as noted previously, the Public Disclosure Provision furthers Congress's purposes of "protect[ing] the integrity of the electoral process" and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b); see id. §§ 20507, 20510. The Court concludes that Exception J, by limiting the disclosure of information within the ambit of the Public Disclosure Provision, poses "sufficient

---

*any* state; rather, it suggests that "state" may include a United States territory or the District of Columbia. See Pl. Reply, PageID # 870; see also 1 M.R.S.A. § 72. Second, if the Maine legislature intended to permit the use of the Voter File for the purpose of evaluating *another* state's voter list maintenance, it could have easily indicated as much in the statutory language. Rather, it chose to limit the statutory language to "the State," which – given its singular, capitalized form and its placement in a Maine statute – one would reasonably understand to refer to Maine specifically. The Secretary also has not pointed to any legislative history suggesting that the Maine legislature meant to broadly include all states in Exception J. Finally, a comparison of Exception J to other portions of the election statute supports this Court's conclusion that "the State" refers to Maine specifically. See, e.g., 21-A M.R.S.A. § 1205-A (dividing "[t]he State" into two congressional districts that consist of only Maine counties); see also Inter Tribal, 570 U.S. at 10 ("Words that can have more than one meaning are given content . . . by their surroundings." (citation omitted)); Brown v. Gardner, 513 U.S. 115, 118 (1994) ("[T]here is a presumption that a given term is used to mean the same thing throughout a statute."); Est. of Joyce v. Com. Welding Co., 55 A.3d 411, 415 (Me. 2012) ("[W]e first look to the plain meaning of the statutory language, and 'construe that language to avoid absurd, illogical or inconsistent results.'" (citation omitted)).

[18] The Secretary asserts that attempting to enforce the NVRA would necessarily "involve," or at least be directly related to, evaluating a state's list maintenance efforts. See Def. Mot., PageID #s 847-48. Accordingly, she concludes that Exception J would allow for the use of the Voter File to enforce the NVRA. Plaintiff, in turn, stresses the different meanings of "evaluate" and "enforce" and points to "basic rules of statutory interpretation requir[ing] that words in a statute be given" their ordinary meaning. Pl. Mot., PageID # 867 (citation omitted). To the extent that evaluation of Maine's Voter File would form the basis of a legal action to enforce the NVRA, the Court concludes such enforcement would likely be "directly related" to evaluation of Maine's voter list maintenance obligations. However, for the reasons set forth above, Exception J as written would prohibit using the Voter File to enforce the NVRA when the basis for such action was the evaluation (via Maine's Voter File) of *another* state's voter list maintenance obligations.

Exhibit A

obstacle[s]" to the accomplishment and execution of Congress's purposes. See Cormier, 51 F.4th at 6 ("What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." (quoting Crosby, 530 U.S. at 373)); see also Jud. Watch, Inc. v. Lamone, 399 F. Supp. 3d 425, 445 (D. Md. 2019) (concluding that state law's exclusion of voter organizations, which "have the resources and expertise that few individuals can marshal," from access to voter registration lists undermined the Public Disclosure Provision's efficacy). To the extent the Secretary asks this Court to interpret Exception J as consistent with the NVRA, the Court declines to "finely parse" the NVRA "for gaps or silences into which [the] state regulation might fit." Fish v. Kobach, 840 F.3d 710, 729 (10th Cir. 2016).[19] "If Congress intended to permit states to so alter or modify" the Public Disclosure Provision by limiting the disclosure of certain information, "it would have so indicated." Id.[20]

For similar reasons, the Court is not persuaded by the Secretary's argument that Plaintiff lacks standing to pursue its claims challenging the Use and Enforcement Bans. The Secretary maintains that, because she interprets Exception J "as permitting cross-state evaluation of voter lists and enforcement of list maintenance requirements," PILF cannot show an "injury in fact" and therefore lacks standing. (Def. Mot., PageID # 851; see id., PageID # 849.) It is undisputed that Plaintiff regularly uses "records and data complied through [federal and state] open records laws"

---

[19] In support of her request that the Court apply the avoidance canon and construe Exception J as consistent with the Public Disclosure Provision, Defendant cites to (inter alia) Judge Woodcock's decision in Pharm. Care Mgmt. Ass'n v. Rowe, 307 F. Supp. 2d 164 (D. Me. 2004). See Def. Mot., PageID #s 847, 850; Def. Reply (ECF No. 86), PageID #s 898-99. In that case, the presumption against preemption applied and did so "with special force" because the court was evaluating a state statute that "regulate[d] an area of public health." Pharm. Care, 307 F. Supp. 2d at 172. Additionally, the avoidance canon applied "more particularly" in that case because the court was evaluating a motion for preliminary injunction. Id. Here, in contrast, the presumption against preemption does not apply at all. See Mot. to Dismiss Order, PageID # 594; Inter Tribal, 570 U.S. at 14-15. That case is therefore inapposite to the case at bar.

[20] Indeed, as noted above, Congress provided two exceptions to the Public Disclosure Provision's broad mandate, neither of which apply here. It is not within this Court's purview to manufacture additional exceptions.

Exhibit A

to evaluate how various states maintain their voter lists and to "produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission." (Def. Resp. SMF, PageID # 806.) Plaintiff uses a state's voter roll to not only evaluate "that particular state's voter list maintenance activities [but] also those of other jurisdictions and states." (Id., PageID # 811.) It is therefore likely that Plaintiff would use Maine's Voter File to, inter alia, evaluate other states' voter-list maintenance and would publicly disseminate the information therein as part of its educational efforts. As discussed above, this conduct would contravene Maine law. Accordingly, it is "highly probable" that Plaintiff "will at some point find itself [] in violation of a statute that takes direct aim at its customary conduct." New Hampshire Right to Life Pol. Action Comm. v. Gardner, 99 F.3d 8, 16 (1st Cir. 1996). Plaintiff's challenges are therefore "entirely appropriate unless the state can convincingly demonstrate that the statute is moribund or that it simply will not be enforced." Id. Here, Maine has done neither.

The Court recognizes that the record here includes an affidavit from the Deputy Secretary of State affirming that "the Elections Division would not view" the use of the Voter List "data to evaluate other states' voters list maintenance" or in "judicial proceedings relating to list maintenance or the integrity of voter lists to be a violation of" Exception J. (Flynn Aff., PageID #s 747-48.) However, these representations, as Plaintiff notes, "do not have the force of law and are not binding on [her] or future office holders." (Pl. Reply, PageID # 870.)[21] Thus, Plaintiff has

---

[21] Moreover, as Plaintiff notes, violations of Maine's election laws are investigated and prosecuted by the "Attorney General (or district attorney), not the Secretary." Pl. Reply, PageID # 871. To this end, the Secretary maintains that the Office of Attorney General, which "represents the Secretary in this matter," "is fully in accord with the Secretary's interpretation" of Exception J. Def. Reply, PageID # 900. However, even "an attorney general's non-binding promise not to prosecute does not eliminate plaintiffs' standing" because "the Attorney General or his successors might change their mind." Rhode Island Med. Soc. v. Whitehouse, 66 F. Supp. 2d 288, 303 (D.R.I. 1999); see Stenberg v. Carhart, 530 U.S. 914, 940 (2000)

Exhibit A

not been provided meaningful assurances – such as "an affidavit foreswearing prosecution—to mitigate [its] fears." Universal Life Church Monastery Storehouse v. Nabors, 35 F.4th 1021, 1035 (6th Cir. 2022); see Gardner, 99 F.3d at 17 ("[D]efendants have not only refused to disavow [the statute], but their defense of it indicates that they will some day enforce it."). For these reasons, the Court agrees that Plaintiff "continues to face a real and imminent threat of harm sufficient to challenge the Enforcement Ban and the Use Ban." (Pl. Reply, PageID # 872); see Fed. Election Comm'n v. Akins, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.").

The Court also acknowledges Defendant's privacy concerns related to the disclosure of sensitive information contained in the Voter Roll. (See, e.g., Def. Mot., PageID # 836.) Defendant maintains that Exception J, by restricting the use and dissemination of voter information, "provides assurance to Mainers that registering to vote will not expose their personal data to [] inappropriate uses." (See id., PageID # 840.) Consequently, according to Defendant, "Exception J is [] quite literally an effort by Maine to do precisely what Congress bade it to do: 'implement [the NVRA] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office.'" (Id. (quoting 52 U.S.C. § 20501(b)(2)).) However, "[e]ven state law that 'attempts to achieve one of the same goals as federal law' may be preempted when 'it involves a conflict in the method' of execution." Cormier, 51 F.4th at 11 (quoting Arizona, 567 U.S. at 399). In the Court's view, Maine law poses such a conflict. "The plain meaning of the NVRA's disclosure requirement is that disclosure of completed voter registration applications containing [information such as] the address, birth date, and signature of applicants includes disclosure of that information." Project

---

("[O]ur precedent warns against accepting as 'authoritative' an Attorney General's interpretation of state law when 'the Attorney General does not bind the state courts or local law enforcement authorities.'" (citation omitted)).

Exhibit A

Vote/Voting for Am., Inc. v. Long, 889 F. Supp. 2d 778, 781 (E.D. Va. 2012).[22] While the Court recognizes that the Public Disclosure Provision "may conceivably inhibit voter registration in some instances" by "requiring public disclosure of personal information," "this potential shortcoming must be balanced against the many benefits of public disclosure." Project Vote, 682 F.3d at 339; see, e.g., Pub. Int. Legal Found., Inc. v. Matthews, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (concluding that a state's "interest in protecting the privacy of its citizens is not so great as to permit noncompliance with the Public Disclosure Provision"), clarified on denial of reconsideration, No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022). "It is self-evident that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls." Project Vote, 682 F.3d at 339. Moreover, the Court echoes the following reasoning by the Fourth Circuit:

> It is not the province of this court . . . to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting NVRA Section 8(i)(1), which plainly requires disclosure of completed voter registration applications. Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections.

Id. Thus, the Court cannot ignore the plain language of the NVRA and Congress's purposes to safeguard Exception J and its privacy protections. In sum, the Court concludes that the NVRA preempts Exception J.

---

[22] Additionally, the NVRA requires the Election Assistance Commission, "in consultation with the chief election officers of the States, [to] develop a mail voter registration application form" for federal elections. 52 U.S.C. § 20508(a)(2). That registration form, the NVRA mandates, must be accepted and used by every state. Id. § 20505(a)(1); see Inter Tribal, 570 U.S. at 5. The form requires applicants to provide, inter alia, their full name, residential address, mailing address, and birth date. See 11 C.F.R. §§ 9428.3, 9428.4; see also Gonzalez v. Arizona, 677 F.3d 383, 395-96 (9th Cir. 2012) (discussing contents of the form). There is therefore "no question that Congress intended that such information be disclosed under the statute." Project Vote, 889 F. Supp. 2d at 781.

Exhibit A

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 74) and DENIES Defendant's Motion for Summary Judgment (ECF No. 81).

In accordance with this ruling, the Court concludes that Plaintiff is entitled to a declaratory judgment in its favor on Counts II and III of its Amended Complaint. The Court accordingly finds that the Public Disclosure Provision of the NVRA, 52 U.S.C. § 20507(i)(1), preempts the restrictions of Exception J, 21-A M.R.S.A. § 196-A(1)(J). The Court also finds that the Public Disclosure Provision preempts the fines imposed by 21-A M.R.S.A. § 196-A(5) for a violation of Exception J.

Additionally, the Court acknowledges that, beyond its request for declaratory relief, Plaintiff's Amended Complaint also seeks permanent injunctive relief. (See Am. Compl., PageID # 511.) However, nothing in the parties' briefing addresses this request. Moreover, nothing in the factual record establishes that Plaintiff satisfies the four-factor test for a permanent injunction. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Rather, the record suggests that Defendant would grant Plaintiff's request for the Voter File if and when it files the requisite form and pays the applicable fee. (See Flynn Decl., PageID #s 747-49.) To the extent that Plaintiff retains concern that its request for the Voter File would be contingent on accepting the limitations on use and dissemination contained in Exception J, the Court is satisfied that its judgment declaring those limitations preempted is a sufficient remedy on the record presented. See Greene v. Ablon, 794 F.3d 133, 157 (1st Cir. 2015) ("An injunction should not be granted where 'a less drastic remedy' will suffice." (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165-66 (2010))). Thus, in an exercise of its discretion, the Court declines to grant Plaintiff permanent injunctive relief in connection with this grant of summary judgment.

17

Exhibit A

Finally, to the extent that the Amended Complaint additionally seeks an award of attorney's fees and expenses under 52 U.S.C. § 20510(c), Plaintiff may file a motion in accordance with District of Maine Local Rule 54.2.

SO ORDERED.

                                            /s/ George Z. Singal
                                            United States District Judge

Dated this 28th day of March, 2023.

Exhibit A